## STATE *v.* LULL.

### *Assault and Battery. Evidence.*

On indictment for assault and battery of a prisoner by the prison keeper, there being evidence that the blow was inflicted for disobedience of orders, and that the prisoner had a hammer in his hand at the time that he clutched firmly, and looked pale and appeared nervous and excited, though he made no attempt to strike, but that the keeper expected and feared a blow from him, and had previously been told of his conduct in the prison that led him to believe him a dangerous man, *Held*, that respondent might show that the sheriff who committed the prisoner, informed respondent that he was dangerous and desperate.

INDICTMENT for an assault on James Kefoe. Plea, not guilty, and trial by jury, December Term, 1875, BARRETT, J., presiding.

Kefoe was a convict in the state prison at Windsor, under sentence in Addison County for four years from June 15, 1874. On the 9th of November, 1874, the respondent, who was and for several years had been keeper of the prison, and whose office and duty it was to keep order among the prisoners, and administer discipline and punishment for misconduct on the part of any of

them, was called into the workshop where Kefoe was at work, by Burr, the keeper of that shop, and complaint was made to him by Burr of misconduct on the part of Kefoe, meriting and requiring discipline and punishment according to the rules and usages of the prison in such cases, which punishment was confinement in the solitary, or dungeon, on short allowance of food. For the purpose of inflicting such punishment, the respondent called Kefoe from his place of work to him, and ordered him " to get his coat and cap and pail and go in "—which was the form of ordering a prisoner into the solitary as punishment for some alleged offense. The respondent did not tell Kefoe what the offense was with which he was charged. Kefoe, in reply to said order, without obeying it, said he hadn't done anything. The order was repeated. The same reply was made, but the prisoner did not obey. The order was again repeated, with the addition that if he didn't go, the respondent would hit him a rap with his cane, or some equivalent expression. Kefoe repeated that he had not done anything, but did not start so soon as required, and respondent struck him on the head with a cane that he was accustomed to carry on such occasions, cutting the scalp and partially prostrating Kefoe, whereupon he was taken to his cell by order of respondent, and in a day or two to the solitary, where he remained a day or two, and was then back in the shop at his accustomed work. The alleged assault was the striking of that blow with the cane. As justifying it, respondent claimed in defence, and gave evidence tending to show, that on that occasion Kefoe was defiant in his manner, and spoke as if he didn't mean to do as ordered ; that he had his work hammer in his hand when he came from his place of work on said call of respondent, and which he clutched firmly in his hand on said third order, and appeared pale, nervous, and excited, though he made no use of the hammer as if in the act or attempt to strike the respondent ; that respondent had heard that Kefoe had drawn a knife on one of the overseers in that room ; and in reply to questions put to him by his counsel, respondent testified that he had frequent conversations with Burr in regard to Kefoe for a week before the alleged assault, and that Burr gave him to understand that Kefoe was growing worse all the time ; that there

had been some of Kefoe's conduct in prison reported to him that led him to think that Kefoe was a dangerous man; that he had heard he struck a sheriff who arrested him; that the overseers of the work and a keeper of the shop, told him they thought Kefoe was put up by others who had promised to help him; that on the occasion in question, he expected and was afraid of a blow from Kefoe; that there were some twenty-five in the room at the time.

Said Burr testified in behalf of respondent, that he had often spoken to respondent about what he had seen indicating a conspiracy. There was no evidence nor claim in the argument to the contrary as to said information to respondent, as testified by him and said Burr, either as to the character and conduct of Kefoe prior to his coming to or while in state prison, and it was assumed and treated in the argument on both sides, that the respondent had been so informed.

As tending to show the character and severity of the blow with the cane, and for that purpose only, the government gave evidence tending to show that Kefoe, by his talk and actions, after a few days from his coming back to his work as aforesaid, was experiencing some aberration of mind, which increased gradually upon him as long as he remained in the shop, which was about to the first of April, when, by reason of insanity, it was agreed that he was taken from the shop, and in May, 1874, was sent to the insane asylum at Brattleboro, where he still is, insane.

The respondent claimed, and gave evidence tending to show, that Kefoe did not manifest aberration of mind till the latter part of February or fore part of March, and that his insanity was in no way caused by said blow, and had in court and examined as experts, several medical witnesses.

The respondent introduced Isaac M. Tripp as a witness, whereupon his counsel said they proposed to show by him the violent character of Kefoe just previous to his coming to Windsor, for the purpose of showing the violent character under which he was laboring just previous to the occasion of the striking. This was objected to, whereupon the presiding judge said, " I understand

the law upon this subject to be substantially this : that in cases of this character, it may be shown what is the character of the party, and that his character was known to the respondent—the person implicated by the case on trial. I do not understand that the law permits particular instances of violence to be shown. On the other hand, I understand that the law does not permit it. The utmost limit of the law is, the character of the man for violence ; and that is to be derived from the knowledge that the witness has of his character, and not from specific instances that have come under his observation. That is how I hold the law to be." Counsel for respondent then said he proposed to show by the witness specific instances of violence on the part of Kefoe, which, he was informed by experts, was a material matter in their forming their judgment as to whether the blow had any effect at all in producing the insanity. The examination of the witness then proceeded. The witness was sheriff of Addison County, and knew Kefoe the sixteen or seventeen days he was in jail in that county, in June, 1874. Counsel then asked the witness what Kefoe's general deportment was while in jail there ; but the court excluded the evidence, to which the respondent excepted. The witness then testified that while Kefoe was in jail there, he saw him every day, and it did not occur to him that he was insane. Respondent then offered to show by the witness, "just what the man did do, to connect with the medical testimony which we propose to offer, as one of the elements on which the medical witnesses can infer whether the man was at that time sane or insane." Excluded. Exceptions by respondent. Respondent then offered to show that witness communicated to respondent at the time of committing Kefoe, that Kefoe was a violent and desperate man. Excluded. Exceptions by respondent.

No other exceptions were taken. The charge was full, and satisfactory to both parties. A variety of other evidence was given on both sides, direct and circumstantial, bearing on the question whether said striking was justifiable or not, but as it does not bear on the law involved in the rulings to which exception was taken, said evidence is not recited or referred to.

· *J. N. Edminster* and *J. B. Farnsworth* ( *W. C. French* with them), for respondent.

It is submitted that the testimony of Tripp as to what he communicated to the respondent, is admissible for two purposes, first, for the purpose of showing the grounds upon which the respondent's belief was founded ; second, for the purpose of showing what was in fact his belief.  1 Greenl. Ev. s. 101 ; *Harrison* v. *Harrison*, 43 Vt. 417 ; *Taylor* v. *Williams*, 2 B. & Ad. 845 ; *Lawler* v. *Earle*, 5 Allen, 22 ; Hilliard Rem. for Torts, 475 ; *Blodgett* v. *Farren*, 41 N. H. 398.

The inquiries put to sheriff Tripp were proper, not only for the purpose of showing the general character of Kefoe and his acts, as showing that Kefoe was a desperate and dangerous man, and as testimony from which the medical witnesses could judge of his sanity.  Best Ev. 355, s. 258.

*W. H. Walker*, state's attorney, for the state.

There was no error in the ruling of the court below excluding particular instances of violence on the part of Kefoe.  Whenever the character of the assaulted party becomes material in the respondent's defense, the same rule has been uniformly applied by the courts as when the respondent's character is made material in his defense.  By that rule the testimony has always been limited to the general character.  The law limits, in this case, the testimony as to the character of Kefoe for -violence, to his general character in that respect ; and that must be derived from the witness's knowledge of the character of Kefoe, and not from particular instances of violence on the part of Kefoe.  1 Chit. Crim. Law, 574 ; *State* v. *Smith*, 7 Vt. 141 ; 14 Mass. 387 ; 3 Pick. 194 ; *State* v. *Crozier*, Windham County, February Term, 1874, not reported.  Respondent testified fully as to his knowledge of the character of Kefoe for violence, even to the minutest detail, without objection ; and it was assumed and treated in the argument on both sides, that the respondent had been so informed as to the character of Kefoe ; so the respondent had the full benefit of his knowledge of Kefoe's character for violence, therefore the law was fully complied with, and the rights of the respondent

74

fully protected in that respect. The rule of law limiting this class of evidence to the general character of Kefoe for violence, and to the respondent's knowledge of such character, the respondent's offer to show that Tripp communicated to him that Kefoe was a violent and desperate man while in jail, was properly rejected. But whether this testimony was properly excluded or not, is of no consequence, inasmuch as the government conceded that the respondent had received all the information as to the character of Kefoe for violence that he claimed to have. The testimony of Tripp, if admitted, would not have made the respondent's knowledge greater than he himself claimed to have, and which the government conceded on trial.

No evidence was offered by respondent tending to show that Kefoe manifested any aberration of mind before the time of striking the blow, nor was any such claim made. Tripp testified that Kefoe manifested no aberration of mind in jail, and whether he was insane or not at that time does not aid the respondent in his justification, for neither respondent nor any other person had discovered it then. Neither did respondent put his justification on that ground, but, on the contrary, claimed that Kefoe showed no indications of insanity for about four months after the striking, and hence the severity of the blow could not have caused Kefoe's insanity. The particular instances of Kefoe's violence in jail in June, 1874, could have no tendency to show whether he began to manifest aberration of mind soon after the striking and confinement in the solitary in November, 1874, or not till March, 1875, and the same were properly excluded by the court. Again, respondent's offer, for the purpose of taking the opinion of experts as to the sanity of Kefoe, was properly excluded, for the reason that it did not state what was proposed to be proved in respect to acts or conduct, so that the court could judge whether it was proper for the purpose stated.

The opinion of the court was delivered by

PIERPOINT, Ch. J. We think that the court erred in excluding the testimony offered to be shown by Mr. Tripp as to what he told the respondent at the time he delivered Kefoe to him at the state

prison in respect to his being a violent and desperate man. It was an offer to show that Tripp told the respondent what the character of Kefoe was in respect to his being a violent and desperate man. The form of the words used is not so material as the idea conveyed. This evidence we think was fairly within the rule that the court laid down as governing the kind of testimony that was admissible, not particular acts of violence, but the character of the man in that respect. Such evidence would be material in determining how far the respondent was justified in inflicting the blow which he did, taken in connection with the surrounding circumstances and the evidences exhibited by Kefoe of an intention at the time to make an attack upon the respondent; and such evidence is always admissible as bearing upon the question as to whether a respondent had good reason to fear an attack upon himself, and acted in self-defense.

It is no good answer to this to say that the respondent had himself testified as to what Tripp told him. He had the right to fortify his testimony by that of Tripp, if he could. The respondent stood in a position where his testimony was open to the criticism of being that of a man strongly interested in the result, and under temptation to exaggerate in his own favor; and that consideration would be quite likely to have an effect upon the jury, even though it might not be urged upon them by counsel.

As to the admissibility of the evidence of the acts of the said Kefoe prior to the time of his being brought to the state prison, as bearing upon the question of his insanity prior to his being assaulted by the respondent, it is a question with which we have some difficulty, and we do not pass upon it.

The result is, the respondent's exceptions are sustained, and a new trial granted, and the case remanded.