## AARON BROWNELL v. THE PEOPLE.

*Commitment for murder—Expert testimony as to pistol shots—Character of the accused—Self-defense—Cooling time.*

A commitment is not bad if in terms that would be good in an indictment.

The phrase "cause to suspect" instead of "cause to believe" is admissible in a commitment; and it has not been held necessary in practice that the commitment state that the party is to be held "for trial," as that is taken for granted.

In a trial for homicide, where self-defense is the justification, it is proper to show the relative strength and temper of the parties, and such other personal qualities, not capable of any description except by opinion, by witnesses who are familiar with them and capable of judging; and to show also that the accused seemed to be in fear of his assailant, and that the latter was a powerful man of a dangerous temper, who had threatened him.

Firing a bullet once into a suit of clothes does not qualify one to testify as an expert as to the effect of a pistol shot upon clothing at a certain distance; the style and calibre of the weapon and the strength of the charge need to be considered, and the witness should know of similar experiments at greater or less distances.

In a trial for homicide testimony of the good character of the accused cannot be met by evidence that he had formerly committed an act of violence against another person, at another place, and under different circumstances.

Any serious bodily harm, like mayhem, apprehended from a felonious attack, justifies extreme resistance, and the assailed cannot be required to draw very fine distinctions as to the extent of the injuries likely to be inflicted.

It is not a presumption that the mere presence of by-standers will prevent an assailant from inflicting extreme injury.

It is error to leave a case of homicide to the jury on the theory that the accused had armed himself with the intention of killing the deceased on the first pretext or assault by him, and took advantage of an attack to do so, unless there is testimony legally bearing in that direction.

Where, without cooling-time, one shoots a violent assailant and there is nothing to show that his apparent fear of his assailant was a pretext to enable him to commit murder, it is error to mislead the jury with instructions as to cooling-time not warranted by any facts in the case.

Error to Branch. Submitted April 12. Decided June 4.

INFORMATION FOR MURDER. Defendant brings error.

*John B. Shipman* and *W. J. Bowen* for plaintiff in error. In a trial for killing an assailant it is proper to show that he was regarded as a dangerous man, *People v. Eastwood*, 14 N. Y., 562; *Beaubien v. Cicotte*, 12 Mich., 459; *Lund v. Tyngsborough*, 9 Cush., 36; *Culver v. Dwight*, 6 Gray, 444; *Hardy v. Merrill*, 56 N. H., 227; 1 Whart. Ev., §§ 511–12; evidence of the general good character of a person accused of crime cannot be met by proof of acts that are not a part of the offense charged, Wharton on Homicide, §§ 592, 594; 1 Whart. Ev., § 564; *Reg. v. Rowton*, 2 Lead. Crim. Cas., 333, 341; *Griffin v. State*, 14 Ohio St., 55; *Com. v. O'Brien*, 20 Amer., 325.

Attorney General *Otto Kirchner* for the People declined to support the conviction.

CAMPBELL, C. J. Brownell was convicted of murder in the second degree, for killing one Marvin H. Bailey on the 5th day of July, 1876. The fatal shot was given upon an actual or threatened assault made by Bailey on Brownell, while the latter was on his way home from a place where both had been present, and Bailey's conduct was wanton and ugly, and without any adequate occasion, if there was any appearance of occasion.

On the 6th of July Brownell was arrested and held for examination. On the 26th the justice returned the depositions to the circuit court for the county of Branch, the homicide being in Quincy in that county. On the 1st of May, 1877, the information was filed, and on the same day plaintiff in error was arraigned and brought to trial. Before pleading he moved to quash the information on four grounds, which were in brief: 1. That the return does not show the commission of the crime charged; 2. It does not aver probable cause to believe the defendant guilty; 3. It does not show whether bail

was fixed, or the offense deemed bailable; 4. It does not appear the defendant was committed for trial on the charge.   The motion was overruled.

The offense charged was murder, and inasmuch as the indictment or information does not state the degree, which must be found by the jury, there seems to be no defect in a commitment which describes the offense as it is charged.   Upon a question of bail, the real character of the charge and the degree must in some way appear, inasmuch as murder in the second degree is bailable by a justice.   Comp. L., § 7868.   The statutes are certainly not in a very satisfactory shape, but we think it would be going too far to hold a commitment bad, for terms which would be good in an indictment.

The objection that the justice used the phrase "cause to suspect" instead of cause to believe, has some apparent reason in it, and certainly the statute does not contemplate a commitment upon evidence that does not make out a *prima facie* case of guilt.   But we do not think the language of the statute, requiring probable cause "*to believe*" the prisoner guilty was intended to introduce any new rule.   The common law term in such cases was "suspicion" and not "belief," and the habeas corpus act refuses the statutory writ of right in cases where persons are committed on "suspicion" of felony or treason.   Comp. L., § 6994.   Although the terms are not strictly synonymous, the statutes seem to use them in the same sense.

The question of bail does not seem to us to be important upon a motion to quash.   The objection that the commitment does not state the party is to be held "for trial," as required by § 7860, is also one which would have weight if the precedents had not very generally omitted such a phrase.   It seems to have been quite generally taken for granted that a justice's commitment was by inference to be so understood.

No point seems to have been taken on the trial, and no error is alleged, upon the somewhat remarkable delay

in filing the information, and extreme haste in urging it on when filed. While the proceeding unexplained appears peculiar, to say the least, yet we cannot consider it on this record, and it may be open to a satisfactory explanation.

An objection made to a ruling compelling a witness to answer questions touching his deposition without showing or reading it to him,—and which is claimed to be within *Lightfoot v. The People*, 16 Mich., 507, becomes unimportant, from there being no attempt at impeachment.

The defense rested upon the grounds among others, that Brownell used a pistol to repel an assault which was not only violent in fact, but made by a powerful man of dangerous temper, who had made threats against him. Looking at the case in a common-sense light, we cannot avoid seeing that any person would naturally be more in fear of a man of that sort than of a quiet or a weaker man, and would in case of an attack from him, feel a greater need of extreme measures to protect himself and resist his adversary. Inasmuch as every one finds his excuse in facts as they honestly appear to him, such important facts as these cannot be disregarded.

The witnesses who were examined, or offered for examination, and whose testimony was excluded as inadmissible, were personally familiar with both parties and capable of forming opinions about their relative strength, tempers, and other personal qualities, not capable of any description except by opinion. We think this testimony should have been received and not struck out. *Hurd v. People*, 25 Mich., 405.

It appears to us that the testimony of one called as an expert upon the effect of a pistol shot upon the clothing when fired at a certain distance, was based on too small an experience. A single pistol shot through his own clothing without any proof of the comparative amounts or kinds of loading, and without ever seeing

further experiments at greater or less distances or at the same distance, with pistols of the same or different make or calibre, is too small a foundation for generalizing.

There is no doubt that evidence of the opinions of witnesses that Brownell appeared to be in fear should not have been shut out. The case of *People v. Lilly*, ante, p. 270, decided since the trial below, covers so much of this case as to make it useless to enlarge on this point and some others.

We think it was also proper to seek to show the previous threats and conduct of Bailey as having some tendency to explain the character of his assault on Brownell. The attack was in the night, and no witness could see very clearly at any distance what may have been manifest to Brownell as to the extent of his danger.

It was entirely inadmissible, in answer to general good reputation of the prisoner, to receive evidence of an alleged act of violence against another person than Bailey, at a former time and different place. The prisoner could not be prepared to meet any such testimony or explain it, and its introduction might seriously prejudice the jury. The court the next day after its reception ruled it out, but in the meantime the other proofs in the case had been tinctured by it, and the effect could not be removed. Doubtless there may be cases where striking out evidence may undo the wrong of receiving it; but this is not always the case, and the effect of such proof on a man's character cannot be readily undone.

Upon the charge, to which many exceptions were taken, it may be said that in many respects it resembles the charges given at the circuit in *People v. Lilly*, and in some respects those given in *Nye v. People*, 35 Mich., 16. It seems to us that there is evidence in the record showing that in some respects charges which may have been correct abstract legal propositions, had some tendency to mislead the jury in considering the quality of the offense, because not warranted by the testimony.

The circumstances of the attack, as shown by the prosecution, show that Bailey was the aggressor, and had no possible excuse for it. There was nothing to warrant any discussion of murder unless upon a theory which the court permitted to be considered by the jury that Brownell had armed himself intending to kill Bailey on the first pretext or assault and took advantage of an attack that he might do so. There was no testimony which could be regarded as legally bearing in that direction, and it is not allowable for a jury to convict a man upon imagination. There must be proof which is enough to remove their doubts, and they cannot be permitted to eke it out by fancy. The charge which allowed them to act upon such a notion in determining between murder and other grades of homicide, or to act on it at all, was erroneous.

The defendant below asked a number of specific charges which were refused, and which it is claimed were not covered by charges actually given.

The case was chiefly dealt with as involving either murder or excusable homicide. Manslaughter was referred to in a purely abstract way, with no reference to the facts.

Upon the testimony there was no room for a verdict of anything more than manslaughter, if the shooting was caused by Bailey's attack, and provoked by it. There was no cooling time. The whole affair was in hot blood, and the attack was a violent one, or else the anger or fear of Brownell was a mere pretext to enable him to commit murder. We have found no testimony on either side to maintain such a theory. And although the charges requested pointed out very clearly various matters which deserved and required attention, the only charge given concerning manslaughter gave no light upon the nature of the provocation which might be sufficient, and included remarks upon cooling time which had nothing to do with the case on trial. The jury were

clearly misled by the charges upon this subject, and the omissions to charge. No doubt the requests were numerous and not all important. But the defendant may justly complain if any important defense is practically ignored.

We think also that while the charge was in the main very fair upon self-defense, it was too narrow in confining it to apprehension of immediate danger to life. Any serious bodily harm apprehended from a felonious attack —such as mayhem, for example—would not merely excuse but justify extreme resistance. A man cannot be required when hard pressed, to draw very fine distinctions concerning the extent of the injury that an infuriated and reckless assailant may probably inflict.

There was also error, as we held in the case of *Lilly*, in making the presence or proximity of third persons an important consideration in determining whether there was extreme danger. The presence of by-standers does not so generally operate to prevent the excesses of sudden violence that the law can presume it will give much confidence to the party assailed. When they actually interfere in season, they usually prevent any serious conflict. Where they do not thus interfere, there is not usually any great likelihood of their doing much good later.

We think the defenses of manslaughter and self-defense were not fairly presented by the charge, and that so far as the record shows, they were really the important issues in the cause.

The judgment must be reversed, and a new trial ordered. The defendant must be released from State Prison and remanded to the custody of the sheriff of Branch county, and his bail fixed at one thousand dollars.

The other Justices concurred.