### COMMONWEALTH *vs.* JOSEPH TIRCINSKI.

Worcester.     October 2, 1905. — October 17, 1905.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, LORING, & BRALEY, JJ.

#### *Homicide.*

In a trial for manslaughter, upon the issue whether the defendant when he struck the deceased had reasonable cause to apprehend great bodily harm to himself, the defendant may show that the general character and habits of the deceased were those of a violent, passionate person, a quarrelsome, fighting man, and that this was known to the defendant.

KNOWLTON, C. J.     This trial was upon an indictment for manslaughter, and there was testimony tending to prove an assault by the deceased upon the defendant, immediately before the striking of the fatal blow. "The defendant offered evidence to show that the general character and habits of the deceased were those of a violent and passionate person, a quarrelsome, fighting man, which character and habits were known to the defendant, as a circumstance tending to show the nature of the provocation under which the defendant acted, and the influence it had on the mind of the defendant, as showing a reasonable apprehension that, if he did not act promptly and effectually, his own death or great bodily harm would be the result." The question before us is on the defendant's exception to the exclusion of this evidence.

The principle on which our decision must rest was stated and discussed by Chief Justice Morton, in *Commonwealth* v. *Barnacle*, 134 Mass. 215. Of a case like the present, he said: " In such cases, therefore, the questions whether there was reasonable

cause to apprehend great bodily harm, and whether the defendant acted under such apprehension, are material issues. . . . The jury could not intelligently pass upon this issue without being informed as to the character and circumstances of the attack. It seems to us clear, that the fact that the assailant was a larger and more powerful man than the defendant has a bearing upon the issue." The habits and temper and spirit of a man, and his fondness for quarrel, if he is naturally combative, are not less important to be considered, in judging of the danger to be apprehended from him, than his size and the strength of his muscles. One man might be of such disposition and habits, that, if exceedingly angry, a murderous assault by him might reasonably be apprehended, while another of equal size, under similar conditions, would not be dangerous. In the case from which we have quoted, the court expressly overruled *Commonwealth* v. *Mead*, 12 Gray, 167, and, if the decision in *Commonwealth* v. *Hilliard*, 2 Gray, 294, was intended to rest upon the same ground, it overruled that also. In *Commonwealth* v. *Hilliard*, in holding that evidence of the general character of the deceased as a quarrelsome, fighting and brutal man of great strength was too remote, the court said that "the provocation under which the defendant acted must be judged of by the *res gestæ;* and the evidence must be confined to the facts and circumstances attending the assault by the deceased upon the defendant." It does not appear from the report in that case that the defendant, at the time of the homicide, had any knowledge of the character of his adversary, which he offered to prove at the trial. His want of knowledge might have been a sufficient ground for the ruling. If he knew it at the time, the known dangerous character of his assailant would have been a part of the *res gestæ*, to be considered in determining whether he had reasonable ground for apprehending grievous bodily harm from the attack. *Commonwealth* v. *York*, 7 Law Rep. 497, 507, was similar to *Commonwealth* v. *Hilliard*. If the decisions in these cases were applicable to evidence of the general character of an assailant as a quarrelsome, brutal, dangerous man, which character was known to the defendant at the time of the homicide, they were virtually overruled by *Commonwealth* v. *Barnacle*, *ubi supra*.

Our conclusion is in accordance with the doctrine of the text books, and with the great weight of authority in other jurisdictions. 1 Wigmore, Ev. § 246. Wharton, Homicide, (2d ed.) §§ 605-627. 5 Am. & Eng. Encyc. of Law, (2d ed.) 872, and notes. *Smith* v. *United States,* 161 U. S. 85. *Abbott* v. *People,* 86 N. Y. 460. *Tiffany* v. *Commonwealth,* 121 Penn. St. 165. *Commonwealth* v. *Straesser,* 153 Penn. St. 451. *State* v. *Lull,* 48 Vt. 581, 587. *State* v. *Nett,* 50 Wis. 524. *Marts* v. *State,* 26 Ohio St. 162. *Horbach* v. *State,* 43 Texas, 242, 250. *Brownell* v. *People,* 38 Mich. 732.

The reasons for the rule have been so often and so fully considered in these cases that further discussion is unnecessary. We are of opinion that the evidence was competent.

*Exceptions sustained.*

*T. L. Brown,* for the defendant.

*W. P. Hall,* Assistant District Attorney, for the Commonwealth.

---

### MEMORANDUM.

ON the eighteenth day of October, 1905, the Honorable HENRY NEWTON SHELDON, one of the Justices of the Superior Court, was appointed a Justice of this Court, and on the twenty-third day of October, 1905, took his seat upon the bench at the sitting of the Court at Taunton in the County of Bristol.