## BAKER *v.* THE STATE.

On the trial of a murder case, the defense involved the question whether the accused acted under the fears of a reasonable man. Evidence was introduced on his behalf, tending to show that several nights prior to the homicide the accused, the deceased, and two others engaged in a fight, in the course of which the accused was cut; that the deceased had thereafter made threats against the accused, and had refused to make friends with him; and that on the night of the homicide the deceased followed the accused, was the aggressor in the rencounter, and drew his hand from his pocket, having something in it which looked like a knife, and advanced upon the accused. *Held,* that it was error to reject evidence, offered for the defendant, to show that about eleven months before the homicide the deceased made an unprovoked attack upon the accused with a deadly weapon, and that about six weeks before the homicide he cursed the accused and threatened to whip him.

NOVEMBER 11, 1914.

Indictment for murder. Before Judge Wright. Floyd superior court. May 14, 1914.

Clint Baker was indicted for the murder of Ernest Richard Lamb, alias Ernest Richard. The evidence on behalf of the State tended to show a case of murder by shooting. That on behalf of the defense tended to show the following, among other facts: Several nights before the homicide the deceased, the accused, and two others had a fight, in the course of which the accused was cut in the head and his clothing was cut in several places. Lamb, the deceased, had

a bad character for violence. A few days before the homicide he said to a witness that Baker, the accused, had cut him, and that "he would have to do it over again." One witness testified that Lamb said that he was going to get even with the man who cut him; another testified that Lamb said he thought he would kill Baker. On another occasion he said that "this thing aint settled yet." On the night of the homicide Lamb and two others were in a store. Baker went in to get some tobacco. As he and another started to go home, Lamb met him and asked him what made him cut Lamb. Baker denied having done so, but Lamb insisted, and proposed to Baker to go outside, as he wished to talk to Baker. The latter said he would not go unless Lamb would make friends, which Lamb declined to do. Baker started home, and Lamb followed him. He told Baker that if the latter went up that street (which was the way that led to Baker's home) Baker would have to fight him. Lamb then ran his hand into his pocket and brought out something which looked like a knife, and, raising his hand, advanced toward Baker, when the latter shot him.

The accused was convicted. He moved for a new trial, which was denied, and he excepted.

*W. M. Henry, H. L. Lanham,* and *J. P. Jones,* for plaintiff in error. *Warren Grice, attorney-general, W. H. Ennis, solicitor-general,* and *Walter B. Shaw,* contra.

LUMPKIN, J. (After stating the foregoing facts.) The controlling question in this case arose on the rejection of certain evidence. The evidence for the State tended to show a case of murder. That on behalf of the accused tended to show that he shot the deceased in defense of his life or of his person against one who was seeking by violence to commit a felony on him, or at least that he acted under the fears of a reasonable man that such was the case. It pointed to the deceased as the aggressor. It further tended to show a previous difficulty between the parties, several nights before the homicide, in which the accused was cut, and perhaps also the deceased, and various threats by the latter in regard to the former, and that the character of the deceased for violence was bad. In this connection the accused offered evidence, that, about eleven months before the homicide, the deceased had made an unprovoked attack upon the accused with a deadly weapon; and also that about six weeks before the homicide the deceased cursed and abused the accused, and said

that he could and would whip the latter, but was induced by a third person to desist. The evidence of each of these occurrences was rejected by the trial judge, on the ground that they were too remote and disconnected.

It may be said generally that remote occurrences wholly disconnected from the case on trial, and throwing no light on it, can not be proved. But previous difficulties may be such as to throw light on the issue on trial, though transpiring some time before the homicide. The admissibility of the evidence is not determined solely by the length of time between the two difficulties, though that may be a factor in solving the problem. All of the circumstances must be considered, to ascertain whether or not there is such a connection between the two transactions that evidence of the former will throw light on the latter. One of the most common ways of showing this connection is to show continued differences or difficulties. Let us take an illustration or two. A difficulty occurs, but the two participants make friends and continue so for months or years. Again they have a difficulty, and one is killed. Ordinarily the former difficulty, standing alone, would throw no light on the homicide. On the other hand, two men have a difficulty in which one attempts to kill the other with a weapon, and as they separate the person making the attempt announces his intention to kill the other whenever they meet again. They go to different places and do not see each other for a considerable length of time. On their first meeting the person threatened kills the other, and there is evidence tending to show that the slayer was attacked, and raising the question whether he acted under the fears of a reasonable man in killing. It can not be doubted that the former difficulty could be proved as a part of his defense.

In 2 Wharton's Crim. Ev. (10th ed.) § 918, it is said: "The general rule is that circumstances showing previous difficulties or encounters between the accused and the deceased are relevant where such circumstances have an obvious connection with, or serve to explain, the facts and circumstances of the homicide charge on trial. The length of time intervening is only material as affecting the credibility and weight to be given to such evidence. Where the difficulty is followed by continuous hostility or a disposition to renew at every opportunity, the weight of the testimony is correspondingly increased. Where the difficulty is temporary or followed

by a cessation of hostilities, or former peaceful relations had been resumed, the circumstances of the previous difficulties are of little value." In section 929 of the same volume it is said: "The rule is clearly settled that apprehensions or opinions of third parties, that the accused is in imminent danger, are not relevant. But facts from which apprehension might reasonably be inferred, as distinct from opinion, are relevant when stated or shown by third parties." On a somewhat similar question of the admissibility of evidence of the bad character of the deceased for violence the author says (vol. 1, § 63a) that generally evidence of the bad character of the deceased is irrelevant, for the law protects every one from unlawful violence, regardless of character; but that to this rule there are two exceptions, one of which is, that, "where the evidence tends to prove that the accused acted in self-defense, evidence of the violent and dangerous character of the deceased, known to the defendant, is admissible as tending to characterize the acts of the deceased, as bearing on the reasonableness of defendant's apprehension of danger at the time of the homicide." Commonwealth *v.* Tircinski, 189 Mass. 257 (75 N. E. 261, 2 L. R. A. (N. S.) 102, 4 Ann. Cas. 337).

In 6 Enc. Ev. 779, it is said: "By the great weight of authority when the evidence as to self-defense is conflicting, or a sufficient preliminary showing has been otherwise made, the defendant may show his previous difficulties with the deceased or the latter's previous attempts upon his life, or other assaults upon or hostile conduct toward him. Such evidence is competent because it tends to explain the conduct of the deceased at the time of the homicide, and shows grounds for the defendant's fear of injury. The remoteness of such acts or conduct is said to be no objection to their competency; but it has been held otherwise, and in some States it must very closely precede the fatal difficulty."

In *Monroe* v. *State,* 5 *Ga.* 85, the third headnote reads as follows: "Threats, accompanied with occasional acts of personal violence, are admissible to justify the reasonableness of the defendant's fears, provided a knowledge of the threats is brought home to him. And repeated quarrels may be shown between the parties, to establish the malo animo; but you can not go back to a remote period, and prove a particular quarrel or cause of grudge, unless it be followed up with proof of a continued difference flowing from that source." In the opinion, after some discussion, and the citation of a case in which it

was held that the prosecutor had the right to show repeated quarrels between the prisoner and the deceased, to establish the malo animo, but that he could not go back to a remote period, and show a particular quarrel, unless he followed it up with proof of a continued difference flowing from such quarrel, Lumpkin, J., added: "Such, precisely, was the object of the evidence, which was repelled. What, I ask, really excited the prisoner to the commission of this act? He seems throughout to be wholly free from the dominion of passion. Did he really and bona fide, then, believe that deceased was coming towards him with intent to kill, or do him some great personal injury? Did not all the circumstances justify this apprehension? In the opinion of this court, any thing which could have operated upon his mind may be proved. Monroe seems to have lived in habitual fear and alarm, and he probably had good cause."

In *Haynes* v. *State,* 17 *Ga.* 465, the presiding judge charged that what took place prior to the day of the killing was to be considered by the jury only so far as to ascertain whether there was malice or not on the part of the prisoner. Lumpkin, J., said (p. 484) : "Why limit the testimony to this object? Did it not serve, in some degree, as a key to the motives and conduct of the parties in the final interview, which terminated so fatally? This court stands pledged, by its past history, for the abolition, to the extent of its power, of all exclusionary rules which shut out facts from the jury which may serve, directly or remotely, to reflect light upon the transaction upon which they are called upon to pass."

In *Hatcher* v. *State,* 18 *Ga.* 460, on a trial for assault with intent to murder counsel for the accused offered evidence to show that a fight occurred between the prosecutor and the defendant about two years before the alleged crime, and announced that they expected to connect the two fights by repeated threats and continuous acts of violence on the part of the prosecutor, extending down to the time of the committing of the alleged crime. The court required counsel to begin with the last fight and go back to the first. It was held that this was not error; and it was added that the evidence by which it was sought to connect the two fights utterly failed to do so, but showed that the prosecutor had stood in the relation of employer and friend to the accused, and had done him kindnesses. In *Bowie* v. *State,* 19 *Ga.* 1, 7, in a murder case the accused offered to prove that the deceased, when killed, was a fugitive from Tennessee for

an offense, and what the offense was. This evidence was held inadmissible. But Benning, J., said: "If the crime of which the slayer offers to prove the person slain to have been guilty is such that from its very nature it may stand as one among those 'circumstances' which the law considers 'sufficient to excite the fears of a reasonable man,' then, perhaps, evidence that the person slain was guilty of it is admissible; but in this case the bill of exceptions fails to tell us what was the crime of which the accused offered to prove the deceased to have been guilty."

In *Pound* v. *State,* 43 *Ga.* 88, the homicide took place in February, 1867. The court allowed the State to prove that in October or November, 1866, the deceased spoke to the prisoner at a Sunday school, and the prisoner did not answer. This was held to be error. It was said that "the admission of acts of previous quarrels, of particular acts, to be admissible against the prisoner, must not be a separate, distinct, and independent act, but there must be some link of association, something which draws together the preceding and subsequent acts, something which gives color of cause and effect to the transaction, and sheds light upon the motive of the parties, to render such particular act or acts admissible. The state of feeling generally between them may go in evidence to illustrate their conduct at the time." It will be observed that here evidence of the previous failure or refusal of the accused to answer the deceased when the latter spoke to him, several months before the homicide was offered by the State to show the animus of the accused, and that it was not a case of showing previous acts by the deceased which might throw light upon the question of whether the accused acted under the fears of a reasonable man at the time of the homicide.

In *Powell* v. *State,* 101 *Ga.* 9, 16 (29 S. E. 309, 65 Am. St. R. 277), evidence was offered to show the character of the deceased for violence. Little, J., said: "Except when special facts may have been shown to have existed in a particular case, proof of character, conduct, or utterances of the deceased is not admissible in evidence in trials for homicide, because neither of them will ordinarily justify or extenuate the killing. 2 Bishop's Crim. Proc. § 609. In the class of cases, however, where the defendant rests his defense on the claim that he acted in self-defense, the particulars and details of his action become material, because the law judges him by the necessity for his action as it truly appeared to him, and he may then

legally give in evidence such things known to him of the character, prior conduct, or threats of the person with whom he was contending, as may justly be considered as affecting his action which brought about the homicide." As to the admissibility of threats by the deceased, which had been communicated to the accused, when offered as tending to show grounds for reasonable fear, in connection with other evidence, see *Keener* v. *State,* 18 *Ga.* 194 (63 Am. D. 269).

In *Daniel* v. *State,* 103 *Ga.* 202 (29 S. E. 767), where the defense in a murder trial was that the accused had shot and killed the deceased under the fears of a reasonable man that his own life was in danger, and where there was evidence on behalf of the accused tending to show that, immediately before the homicide was committed, the deceased, upon provocation by words alone, placed his hand behind him and advanced upon the accused, it was held to be error to reject evidence tending to show that the deceased habitually and notoriously carried a pistol, and that this was known to the accused; and it was said that this is true whether upon the occasion of the homicide the deceased actually had upon his person a concealed pistol or not. Evidence was also offered on behalf of the accused to show that, several months before the homicide, he had procured a pistol for the purpose of being used by a person in quelling a disturbance in which the deceased participated, and that ever since that time the deceased had borne him ill will, and had repeatedly threatened his life. It was stated that "the court had previously allowed proof of threats communicated to the accused, and the sole question raised by this assignment is as to whether it was competent to prove this act of the accused occurring several months prior to the time of the homicide." It was held that this evidence was not admissible. The cases of *Brown* v. *State,* 51 *Ga.* 502 (in which it was held that on a murder trial there was no error in allowing evidence on behalf of the State of a difficulty between the parties three weeks before the homicide, as bearing on the question of whether the killing was done with malice or not), and *Starke* v. *State,* 81 *Ga.* 593, 7 S. E. 807 (in which evidence on behalf of the State in a murder trial was admitted to show that the accused and the deceased had had a difficulty between three and six months before the homicide, in the course of which the deceased threw two rocks at the accused, and the latter went and got his gun, which was taken from him), were said to be apparently in conflict with the decisions in

*Monroe's* and *Hatcher's* cases, supra. But Mr. Justice Cobb added (p. 208) : "An examination of these cases, however, will show that they were dealing with the admissibility of this evidence for an entirely different purpose, viz., whether the killing was done with malice or not. But even if they are in conflict with the two cases cited supra, the earlier cases are binding as authority until they are overruled." On the subject of the admissibility of evidence on behalf of the State to show a long course of ill treatment and cruelty on the part of a husband towards his wife, continuing until shortly before he killed her, see *Roberts* v. *State,* 123 *Ga.* 146 (51 S. E. 374) ; and on the subject of the admissibility of communicated threats as bearing on the question of reasonable fears, and of uncommunicated threats under certain circumstances, see *Warrick* v. *State,* 125 *Ga.* 133 (53 S. E. 1027).

From a consideration of these and other decisions, it will appear that in a murder case the admissibility of evidence in regard to previous difficulties between the accused and the deceased is not to be determined solely by reference to the almanac; but that the connection between the difficulties, and whether proof of the one will throw light upon the other, is to be decided. If there is no apparent connection between the two, and the one in no way illustrates the issue arising out of the other, the evidence is inadmissible. But if the defense involves the question of whether the accused acted under the fears of a reasonable man, and acts of the deceased in former transactions are of such a character and so related to the latter in point of time, continuity of conduct, or other circumstances, as to throw light on the question of whether the accused acted under such fears of a reasonable man at the time of the homicide as would justify him in taking the life of the deceased, the evidence is admissible.

If on several occasions the person killed threatens and seeks to do violence to the accused, in order to furnish a legal connection between the occurrences and admit evidence of the previous acts of the deceased, when offered by the accused as bearing on the question of reasonable fears, it is not necessary that the threats and attempts (if evidence of them is otherwise admissible) should have arisen from the same cause.

Tested by these rules, the evidence in regard to previous difficulties was erroneously excluded. There was evidence on behalf of the

accused tending to show that the deceased was the aggressor at the time. of the homicide; and the excluded evidence, taken in connection with that introduced, was relevant on the subject of whether the accused acted under the fears of a reasonable man..

*Judgment reversed. All the Justices concur.*