37885. SHELLMAN *v.* THE STATE.

664

Decided November 12, 1959.

*W. Roscoff Deal,* for plaintiff in error.

*B. D. Dubberly, Solicitor-General,* contra.

Gardner, Presiding Judge. ■ The whole theory of the defendant is that a mob of about 40 Negroes had assembled in a part of the City of Pembroke where they had resided pursuant to a conspiracy to kill the chief of police; that he was invited to embark upon this conspiracy by a brother of the decedent and refused; that his refusal caused members of the mob to berate him and bring him into disfavor; that this led to the ultimate unpleasantness and resulted in his being forced to shoot the decedent in self-defense under circumstances which according to the defendant's statement were justified as the decedent was advancing upon him with a knife at the time. Witnesses present denied that the decedent was armed and insisted that the shooting was without any provocation whatever. Even if the jury did not believe that the decedent was armed, a defendant certainly could be acting under the fears of a reasonable man if he is armed with one pistol and is literally surrounded by 40 unarmed, able-bodied antagonists. Even the chief of police, who was not only armed with a service revolver but also with the authority and majesty of the law, recognized the danger at the hands of this mob.

Obviously it was difficult for the defendant to establish his theory by witnesses present because, according to the theory, they were all members of the mob and were angered at him because he would not join it. Aside from his statement, however, there is some corroborating evidence which supports the theory. The decedent made what was admitted in evidence without objection, a dying declaration in which he admitted that such a movement was on foot but denied that he was in any way participating in it. The main witness in support of the theory was the police chief himself who went into this part of Pembroke, apparently on a routine round with his car. The facts which he offered to testify to and which were excluded and which would have supported the theory of the defendant are as follows: that he drove into the area where some 40 Negroes were assembled; that when he drove up a brother of the decedent and others including the decedent himself approached his car and took him to task about an arrest he had made a short time previously of another Negro; that the attitude of the mob was belligerent and threatening; that one of them drove a car into the rear of his car so that he could not back up; another drove his car into the front so that he could not move his car forward; that he himself was afraid of trouble with the mob and felt the necessity for getting out of the area; that while he was being condemned by members of the mob the defendant spoke up in his behalf and undertook to appease the mob by pointing out that in making the previous arrest, which was the basic reason for the ire of the mob, the police chief had no doubt only done his duty; that this caused brothers of the decedent in his presence and probably also the decedent himself to heap vile epithets upon the defendant such as "white-loving S.O.B."; that in order to get away from this dangerous situation the defendant moved his car which was already parked in its position before the police chief arrived so that the chief could drive his car out of the mob into a place of safety. This left the defendant by himself and pitted against 40 mobsters. The police chief immediately went to the mayor and reported this incident. The killing followed within 20 minutes thereafter.

Clearly, under *Haynes* v. *State,* 17 *Ga.* 465 et seq., the testi-

mony of the police chief which was excluded was not only admissible but was supporting testimony of the whole theory of the defendant. In that case evidence was offered by the defense to the effect that the decedent was seen, on the night before the killing, throwing rocks into the defendant's yard, and the error was held to be that the evidence was admitted but restricted to the issue of malice on the part of the accused when it had been offered to support the theory of the defense that the shooting arose in self-defense in the course of proper action on the defendant's part to regain use of a joint well from the deceased. The court there said (p. 484): "This court stands pledged by its past history, for the abolition, to the extent of its power, of all *exclusionary* rules, which shut out facts from the jury which may serve, directly or remotely, to reflect light upon the transaction upon which they are called upon to pass. For one case gained by improper proof, ninety-nine have been lost or improperly found, on account of the parties being precluded, by artificial rules, from submitting *all* the facts to the tribunal to which is committed the decision of the cause. *Verdicts,* notwithstanding their etymological meaning, (*vere dicto*) will never speak the truth, because juries can never measure the power and influence of motives upon the actions of men, until the door is thrown wide open to all facts calculated to assist, in the slightest manner, in arriving at a correct conclusion in the pending controversy." See to the same effect *Reese* v. *State,* 7 *Ga.* 373 (3); *Baker* v. *State,* 142 *Ga.* 619 (83 S. E. 531); *Jackson* v. *State,* 18 *Ga. App.* 683 (1) (90 S. E. 368); *Coleman* v. *State,* 141 *Ga.* 737 (3) (82 S. E. 227), and *Curington* v. *State,* 162 *Ga.* 307 (1) (134 S. E. 41), all holding that transactions between the defendant and the decedent preceding the killing and which would tend to throw light on the state of mind of the parties at the time, as well as other pertinent facts, are admissible in evidence. Accordingly, the exclusion of the evidence complained of in special ground 1 of the amended motion for new trial was reversible error.

■ Grounds 3 and 4 of the amended motion complain of the omission by the court, in his charging of Code § 26-1012, of the words "to justify the killing. It must appear that the circum-

stances were sufficient." Code § 26-1012 constitutes a limitation of Code § 26-1011 wherein justifiable homicide is defined and in addition thereto makes provision for the fears of a reasonable man. The limitation excludes as a defense a bare fear of those offenses to prevent which the homicide is alleged to have been committed, which offenses are enumerated in the definition of justifiable homicide by Code § 26-1011. Accordingly, the charge of § 26-1012 omitting the words complained of in these grounds of the amended motion for new trial takes from this defense its full complete meaning; it was likely that this error resulted in confusing and misleading the jury, and it constitutes an incorrect statement of the law as an abstract principle. Since the case is to be tried again it is unnecessary to determine here whether this error is sufficient alone to require reversal. However, on another trial it is suggested that this Code section be charged in accordance with the language contained in it.

The trial court erred in denying the motion for new trial.

*Judgment reversed. Townsend and Carlisle, JJ., concur.*