## 35477. MILTON v. THE STATE.

NICHOLS, Chief Justice.

Freddie M. Milton appeals his conviction for the murder of his former wife, Marie Benjamin Milton. He was sentenced to life imprisonment. His only enumeration of error contends that the court erred in excluding on motion of the state his testimony and the testimony of one of his witnesses concerning four specific occasions upon which the deceased had attacked him with various weapons. This court reverses.

The deceased had returned from the laundromat and had blown the horn for her three children to help her remove the clothes from the automobile. Her children had come outside to help her. The defendant drove up and parked behind the deceased's automobile. The children were told by their mother to go play on the swings in the yard while their mother talked to the defendant. While playing, the children heard their mother and the defendant arguing. She was standing next to the defendant's automobile in which he was sitting during the entire incident. The children, or at least one of them, then heard and saw the following: A shot was fired. Their mother clutched her side and started bending over, after which additional shots were fired as she fell to the ground and lay on the ground. Blood spurted from her body as she was hit, and dirt was kicked up beside her when one shot

missed her as she was lying on the ground. The gun continued to click as its firing mechanism was operated after it was empty. The defendant then turned on his headlights and drove away.

A neighbor heard the gunshots and the children's screaming, and saw the defendant driving out of the driveway. The state's pathologist who conducted the autopsy discovered four gunshot wounds in the body, all inflicted at close range, some of which were sustained in a manner consistent with the deceased's having been leaning forward or lying on the ground when they were inflicted.

The defendant testified that he never saw a gun or weapon in the possession of the deceased before he fired. His taped interview by a detective was played for the jury during which the defendant was heard to say, "I don't know whether she had one gun or not, but that's what she told me." The detective testified that the defendent had said he never had known the deceased to carry a gun and that she did not own a gun.

The state's motion in limine was sustained, directing the defendant and his counsel to refrain from making any reference before the jury to previous specific acts of violence on the part of the deceased toward the defendant. Defendant made a showing under oath outside the presence of the jury. He would have testified, had the state's motion not been sustained, that he honestly was trying to defend himself; that she had threatened to kill him, had told him she had a gun in her purse, and had started reaching into the purse before he started shooting her; that she had shot him in the hand during an argument in 1971; that she had cut his lip with a butcher knife during an argument in 1978; that during another argument she threw a jar at him which cut his foot; that during another argument she had tried to cut him with a knife but he had gotten it away from her; and that his sister, Mary Carter, had witnessed this last occurrence, and would testify concerning it.

The state contends that Milton impermissibly was seeking to prove the general character of the deceased for violence by proving specific instances of violence by the deceased against Milton. Milton contends that he was not

attempting to prove the general character of the deceased for violence. Rather, he contends that he was attempting to illustrate the basis for his reasonable belief that he had to shoot his wife because she was trying to shoot him. Proof of defendant's reasonable belief that he needed to shoot first was the key to a successful defense of self-defense. Code Ann. § 26-902 (a).

The reputation or character for violence of a victim of homicide usually is irrelevant and inadmissible in a murder trial because it is just as unlawful to murder a violent person as it is to murder a nonviolent person. *Doyal v. State,* 70 Ga. 134, 148 (1883); *Baker v. State,* 142 Ga. 619, 622 (83 SE 531) (1914); *Henderson v. State,* 234 Ga. 827, 828 (218 SE2d 612) (1975). The deceased's general reputation or character for violence has been held to be admissible "only when there has been a prima facie showing [by the defendant] that three elements are present: that the deceased was the assailant; that the deceased assailed defendant; and that defendant was honestly seeking to defend himself." *Curtis v. State,* 241 Ga. 125, 126 (1) (243 SE2d 859) (1978). To the same effect: *Campbell v. State,* 222 Ga. 570, 573 (151 SE2d 132) (1966); *Black v. State,* 230 Ga. 614, 615 (198 SE2d 314) (1973); *Henderson v. State,* supra. The rule requiring proof by the defendant of a prima facie case of present assault by the deceased on the defendant also applies in cases in which the defendant seeks to prove prior specific assaults by the deceased upon the defendant to illustrate his contention that he reasonably believed he had to use deadly force to defend himself. *Maynor v. State,* 241 Ga. 315 (245 SE2d 268) (1978). It long has been stated that the general reputation or character of the deceased for violence cannot be established by proof of prior specific acts of violence. *Doyal v. State,* supra; *Warrick v. State,* 125 Ga. 133 (6) (53 SE 1027) (1906); *Campbell v. State,* supra; *Black v. State,* supra. It is upon the authority of the latter cases that the state contends that the trial court correctly sustained the state's motion in limine and precluded all testimony by the defendant and a defense witness relating to the four prior acts of violence by the deceased against the defendant. Some of the reasons for this rule were stated in *Henderson v. State,* supra, at p. 829, as follows: "(1) A

single act may have been exceptional, unusual, and not characteristic and thus a specific act does not necessarily establish one's general character; (2) although the state is bound to foresee that the general character of the deceased may be put in issue, it cannot anticipate and prepare to rebut each and every specific act of violence; and (3) permitting proof of specific acts would multiply the issues, prolong the trial and confuse the jury."

The defendant contends with equal fervor that decisions of this court authorize introduction in evidence of testimony concerning his former wife's prior acts of violence toward him to illustrate to the jury the reasonable basis for his belief that he needed to shoot her to protect himself from being shot by her. From the defendant's viewpoint, limiting his testimony and the testimony of his witnesses strictly to the deceased's general character for violence "leaves the testimony as to [the deceased's character for] violence so general, conclusory and vague as to be of little benefit to the accused." *Henderson v. State,* supra, at p. 829. Certainly, the exclusion of this testimony would be harmful if erroneous.

The defendant principally relies upon *Baker v. State,* 142 Ga. 619 (83 SE 531) (1914), wherein this court held that it was harmful error for the trial court to exclude from evidence testimony to the effect that about eleven months before the homicide the deceased had made an unprovoked attack upon the accused with a deadly weapon, and that about six weeks before the homicide he cursed the accused and threatened to whip him. As basis for this decision, Justice Lumpkin quoted with approval from 2 Wharton's Crim. Ev. (10th Ed.) § 918, as follows: " 'The general rule is that circumstances showing previous difficulties or encounters between the accused and the deceased are relevant where such circumstances have an obvious connection with, or serve to explain, the facts and circumstances of the homicide charge on trial. The length of time intervening is only material as affecting the *credibility and weight* to be given to such evidence. Where the difficulty is followed by continuous hostility or a disposition to renew at every opportunity, the *weight* of the testimony is correspondingly increased. Where the

difficulty is temporary or followed by a cessation of hostilities, or former peaceful relations had been resumed, the circumstances of the previous difficulties are of little value.' " (Emphasis supplied.) 142 Ga. at 621. Further quoting the same authority with approval, this court said: " 'The rule is clearly settled that apprehensions or opinions of third parties, that the accused is in imminent danger, are not relevant. But facts from which apprehension might reasonably be inferred, as distinct from opinion, are relevant when stated or shown by third parties'. . . '[W]here the evidence tends to prove that the accused acted in self-defense, evidence of the violent and dangerous character of the deceased, known to the defendant, is admissible as tending to characterize the acts of the deceased, as bearing on the *reasonableness of defendant's apprehension of danger* at the time of the homicide.' " (Emphasis supplied.) 142 Ga. at 622.

This court in *Baker,* supra held that the admissibility of evidence regarding previous difficulties between the deceased and the defendant is not to be determined solely by the times of the prior occurrences in relation to the time of the homicide; rather, a decision is to be made "whether proof of the one will throw light upon the other . . . If there is no apparent connection between the two, and the one *in no way* illustrates the issue arising out of the other, the evidence is inadmissible. But if the defense involves the question of whether the accused acted under the fears of a reasonable man, and acts of the deceased in former transactions are of such a character and so related to the latter in point of time, continuity of conduct, or other circumstances, as to throw light on the question of whether the accused acted under such fears of a reasonable man at the time of the homicide as would justify him in taking the life of the deceased, the evidence is admissible. . . [I]t is not necessary that the threats and attempts (if evidence of them is otherwise admissible) should have arisen from the same cause." 142 Ga. at 626.

Specific previous difficulties between the deceased and the accused may be introduced *against* the defendant to illustrate his motive. *Evans v. State,* 227 Ga. 571, 577 (181 SE2d 845) (1971); *White v. State,* 242 Ga. 21, 22 (4) (247 SE2d 759) (1978); *Boling v. State,* 244 Ga. 825 (1979).

Since specific acts of *defendants* may be introduced against defendants, this court should anticipate that other defendants reasonably will insist that they be permitted to prove specific acts of the *deceased* toward them. *Maynor v. State,* 241 Ga. 315, 316 (245 SE2d 268) (1978).

In cases of doubt as to whether or not evidence of prior difficulties should be admitted, the evidence should be admitted and its credibility and weight should be decided by the jury. *Warrick v. State,* 125 Ga. 133, 138 (53 SE 1027) (1906); *Jarrard v. State,* 206 Ga. 112, 114 (55 SE2d 706) (1949); *York v. State,* 226 Ga. 281 (174 SE2d 418) (1970). The reason for the rule favoring admissibility of such evidence where the reasonable belief of the accused that he is being assailed by the deceased is put in issue under the plea of self-defense has been stated as follows: "This court stands pledged, by its past history, for the abolition, to the extent of its power, of all exclusionary rules which shut out facts from the jury which may serve, directly or remotely, to reflect light upon the transaction upon which they are called upon to pass." *Baker v. State,* supra, at 623. To the extent that cases such as *Smithwick v. State,* 199 Ga. 292 (1) (34 SE2d 28) (1945), and *Weaver v. State,* 200 Ga. 598, 605 (37 SE2d 802) (1946), might be considered as establishing an exclusionary rule denying the defendant the opportunity to establish by his own *sworn testimony* a prima facie case for the introduction of evidence of prior difficulties between him and the deceased, those cases are overruled and will not be followed.

In the present case, the defendant was not trying to prove to the jury the general reputation of the deceased for violence by offering testimony of specific instances of the deceased's acts of violence toward the defendant. Rather, he was seeking to introduce the testimony concerning those specific acts of violence to illustrate to the jury the basis for his contention that he reasonably believed she was reaching for a pistol in her purse and that it was necessary that he shoot her if he could before she was able to shoot him. Code Ann. § 26-902 (a). This evidence was crucial to his defense, and its exclusion of necessity damaged, if not totally deprived him of, the benefit of his

sole defense.

This court now decides the issue left undecided in *Maynor v. State,* supra, on the basis of the rules stated in *Baker v. State,* supra, because a prima facie case of present assault was made out by the defendant's sworn testimony, as required by *Curtis v. State,* 241 Ga. 125 (243 SE2d 859) (1976). The rule of the present case is that where the defendant has made a prima facie showing of the basis for a reasonable belief that the deceased was reaching for a firearm with the present intention of using it to carry out a death threat recently communicated by the deceased to the defendant, the defendant is entitled to introduce in evidence his own testimony and that of his witnesses to prove specific instances in which the deceased had used a firearm or other weapons or objects to assail him. The lapse of time between the prior occurrences and the homicide, the conduct of the parties toward each other during the intervals between the occurrences, and other such matters go to the weight and credit to be accorded the testimony by the jury and not to its admissibility. In cases of doubt, the testimony should be admitted. The case of *Music v. State,* 244 Ga. 832, (1979), stated the general rule in reference to . specific acts of the deceased against persons other than the appellant, and has no application in cases in which the deceased's prior assaultive conduct was directed toward the accused.

*Judgment reversed. All the Justices concur.*

ARGUED OCTOBER 10, 1979 — DECIDED JANUARY 4, 1980.

*Falligant, Sims & Donaldson, R. B. Donaldson, Jr.,* for appellant.

*Andrew J. Ryan, III, District Attorney, Stephen R. Yekel, Assistant District Attorney, Arthur K. Bolton, Attorney General, Russell N. Sewell, Jr., Assistant Attorney General,* for appellee.