## 61866. MELEAR v. THE STATE.

BIRDSONG, Judge.

Billy Melear was indicted for murder and convicted of voluntary manslaughter, and sentenced to 20 years in prison.

The state produced two eyewitnesses to the killing. The deceased's trailer-mate, Jimmy West, testified that he was lying in bed reading the Bible when he heard cursing and shooting outside. The deceased told West he was going outside to see what was going on; he took his bow and arrow from the rack and West apparently picked up a sawed-off shotgun which belonged to the deceased. The deceased's bow was unstrung. With this unstrung bow the deceased confronted appellant who was cursing and shooting a shotgun. West followed close behind the deceased. The deceased asked appellant why he was there and. whether he was trying to start trouble. The deceased stepped forward (but never lifted his bow), the appellant stepped backward, said "no," and shot the deceased. When appellant

fired, West immediately shot towards appellant at the fire coming from appellant's gun. (The evidence shows appellant received gunshot wounds in the backside, but received no injuries in the front.) Another neighbor testified that on that night he heard the appellant shooting and cursing and knew he was drunk. This witness' story substantiated West's story. He said another man, Larry Cleveland, arrived. "after the shooting," and then he said Cleveland arrived before appellant shot the deceased and tried to get appellant to give him the gun and go in the house. The witness watched the entire incident from his window over a span of about 45 minutes; he saw everything clearly and in detail and saw the appellant shoot the deceased. But the witness told a deputy sheriff that he heard the earlier shooting but only looked out the bedroom window a couple of times before the killing.

The defense produced two eyewitnesses, including the appellant. The appellant testified he shot the deceased in self defense. His trailer was next to the deceased's trailer. When appellant left his trailer and walked over to visit his brother, the deceased and his roommate were standing outside cursing at him. He told his brother Calvin about the trouble and Calvin went to the landlord's house or trailer to report it, and returned. When appellant walked back home, someone (who he believed was the deceased) from around a building near his trailer shot him in the back end. He did not call the police because he had no telephone; he had no car and the police were four miles away. He believed he had to protect himself, so he went back to his brother's trailer and got a gun, then while returning home he met the deceased standing between his and appellant's trailer with a bow and arrow. The bow was strung. Appellant never got to his door; the deceased drew the arrow back at him, said something like "I'm going to kill you, you ————; you've . been messing with with my old lady again." The deceased stepped forward. Appellant said "no," stepped back, and shot the deceased. The deceased's roommate shot at appellant; appellant was not hit. The other defense witness, Larry Cleveland, testified that when he drove up in the trailer yard, appellant said he was having trouble with the deceased, and that they had been throwing rocks at his trailer. Cleveland and appellant sat there a few minutes; appellant hollered out a cuss word and the deceased came out of his trailer with a bow and said, "I'm going to get you." Deceased got in front of appellant and said, "What's this I hear you told Calvin this morning?" Appellant said, "I haven't told Calvin anything." Deceased came towards appellant. He had a bow and arrow and was threatening to shoot appellant with it; he was mumbling and talking out of his head. The bow was strung, the arrow was in it and was pulled back. He said,

"I'm going to get you" three times before appellant said "no" and shot him. Cleveland testified the deceased was the aggressor and made the first move, that appellant then went in the house and got his gun and came back out. A police detective testified that appellant was too drunk to make a statement that night but he made two statements the next day and although there was some variety of detail, in both statements appellant insisted he had shot the deceased in self defense. Melear enumerates two errors of law. *Held:*

1. Code Ann. § 26-902 (a) provides: "A person is justified in threatening or using force against another when and to the extent that he reasonably believes that such threat or force is necessary to defend himself or a third person against such other's imminent use of unlawful force; however, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself or a third person, or the commission of a forcible felony."

Appellant argues the trial court erred in refusing to admit into evidence the deceased's reputation for violence and evidence of specific acts of violence directed toward the appellant. We agree and must reverse the case. The trial judge ruled the appellant had not shown sufficient evidence of the victim's being the aggressor to warrant evidence of his reputation for violence being presented to the jury.

The requirement that to admit evidence of the deceased's reputation for violence and other acts the appellant must make "a prima facie showing . . . that the deceased was the assailant; that the deceased assailed the defendant; and that defendant was honestly seeking to defend himself" *(Milton v. State,* 245 Ga. 20, 22 (262 SE2d 789)) does not permit the judge to decide whether the defendant's story is credible or his actions reasonable or to disregard his evidence if it is conflicting.

The state contends that because the defendant testified he did not know who had shot him in the backside (although he had thought it was the deceased), he could not show the deceased was the assailant; that his statement that deceased actually assailed him was contradicted by the State's testimony; and that he could not show he was honestly seeking to defend himself because his own statements show he acted out of revenge and that his actions were unreasonable. These determinations are patently questions for the jury and not for resolution by the trial judge. Appellant made a prima facie showing of the three elements. If there had been any doubt of this, the evidence ought to have been admitted (see *Milton,* supra, p. 25). Although there was some evidence of prior threats of the deceased and

difficulties with the deceased, appellant was not permitted to develop this evidence or show the deceased's reputation for violence, and was not permitted to argue it to the jury (see *Milton*, supra, p. 23). This was fatal to his defense. The conviction is reversed.

2. The trial court did not err in refusing to permit the witness Cleveland to state his opinion as to the issue of self defense. The ultimate question for the jury is whether the appellant reasonably believed he had to use deadly force to protect himself. "Apprehensions or opinions of third parties, that the accused is in imminent danger, are not relevant. But facts from which apprehension might reasonably be inferred, as distinct from opinion, are relevant when stated or shown by third parties." *Baker v. State,* 142 Ga. 619, 622 (83 SE 531); *Milton,* supra, p. 24. Cleveland's opinion as to whether the appellant acted in self defense was not only irrelevant; it invaded the province of the jury, and the trial court was correct to exclude it.

*Judgment reversed. Shulman, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 15, 1981.

Gerald P. Word, Douglas C. Vassy, *for appellant.*
Arthur E. Mallory III, District Attorney, Marc E. Acree, *Assistant District Attorney,* for appellee.