## 63165. SAWYER v. THE STATE.

QUILLIAN, Chief Judge.

The defendant, Michael Sawyer, was indicted and tried for the murder of Robert Wells — who was also known as "Rebo." He brings this appeal from his conviction for the offense of voluntary manslaughter.

Sawyer was the elected coach of the Lynwood Strokers softball team. On the afternoon of July 26, 1980, Rebo arrived at the game site prior to a scheduled game. Sawyer refused to let Rebo play because he had been drinking and had an injured foot. Rebo "got mad," cursed, and left. After the game was over the team returned to the Lynwood Park community to a store at the intersection of Windsor Parkway and Osborne Road. Rebo said something to the defendant about whether he thought it "was damn funny" and started a fight with defendant. The state's autopsy report showed deceased was 6 feet 5 inches tall and weighed 230 pounds. The defendant, according to his counsel, was 5 feet 10 inches tall and weighed about 135 to 145. A friend of the defendant attempted to pull Rebo off of the defendant. Rebo's brother Jojo, about the same size as his brother, told the people to leave them alone — "let them fight," "I'll shoot you for trying to stop them." However, Jojo and the defendant's friend stopped the fight after the defendant stated "he didn't want to fight . . ." One witness testified as Jojo left he said "he would go get a gun" and "He would kill everybody leaning up against the wall, that whole corner of the parking lot." Another witness stated "he said 'If you want my — if you want me and my brother, one will be on the roof and one will be in the house with a .357 Magnum.' " A different witness remembered the sequence of events as Jojo saying "he was gonna go get his .357 and his brother and come down and shoot

everybody on the corner on the wall."

A short period of time after Rebo and Jojo left the community store they returned in Jojo's van with their cousin Larry Wells. The defendant had gone home and picked up his gun and returned to the corner grocery store and was leaning up against the wall. Jojo went into the store but Rebo left the van and headed directly for the defendant. One witness testified that Rebo "said he was going to kill him [the defendant]." Another witness described the incident: ". . . they said something to one another and then Mike [the defendant] started backing up. And he said, 'Stay off of me,' or something. Then, Rebo was lunging at him. And so he [the defendant] shot . . ." The deceased was shot four times. One witness heard only three shots: "He shot him once after Rebo had said, 'I'm going to kill you,' and you're sure of that? A. I'm sure of it. Q. Then, that second shot was when they were up close? A. That's right, up close enough to grab him down right there. Q. And then that third and final shot, sir was the one in the stomach? A. (The witness nodded head affirmatively.)"

The state's two witnesses, Jojo and Larry Wells, stated that Rebo was only walking in front of the defendant when he suddenly, without warning, opened fire and shot the deceased four times.

A defense witness testified: "Rebo, he just staggered up on him [the defendant], see, and that's when I got behind that, the boy's truck, see." He was asked: "Now, why did you duck when you saw Robert Wells coming out of the truck? A. Okay. After he had left the corner, okay, he already had told — he had done told us that he was coming back . . . Q. Had you heard anyone say they were going to get a gun? A. Only one. I heard his brother . . . He said he had [sic] .357 Magnum . . . Q. Did you see anyone else take cover other than yourself? A. There was bunches, bunch of them moved . . . some of them was going behind the store . . . Q. Is that before the shots were fired? A. That's before the shots . . ." The defendant appeals his conviction. *Held:*

1. Defendant contends the trial court erred in excluding "on motion of the State, evidence of prior acts of violence perpetrated by deceased toward appellant." We agree and reverse. After the state closed, but prior to the defense presenting any evidence, the state announced it had a motion because it anticipated "the defendant will seek to introduce evidence . . . of the deceased's reputation for violence and also I anticipate that they intend to introduce evidence of specific acts of violence as against this defendant . . ." The motion was discussed in light of the evidence already introduced by the state. The defendant's brother and cousin had testified that the defendant shot the deceased as he walked by him — without provocation. The state also introduced the oral, written, and electronically taped

statements of the defendant made to the police immediately after the incident in which he stated: (1) the deceased was the assailant, (2) he had been assailed by the deceased, and (3) was acting in self-defense. He told the police that he was afraid of the deceased and his brother Jojo had told them he was going to get his .357 Magnum and "shoot out [of] the van" he was driving. "I was scared . . . I was trying to protect myself . . . he was coming at me and I was just trying to get him off me . . . I know the type of guy he is . . . I didn't want him to get on me . . . He drawed a gun on me on a couple of occasions, you know. And have [sic] called me out two or three times to fight, you know . . . His brother, [Jojo] I tell [sic] him — I say, 'Please tell Rebo to leave me alone.' "

To establish a foundation for admission of a deceased's reputation for violence, *Campbell v. State,* 222 Ga. 570, 573 (151 SE2d 132) describes the test as showing "prima facie" (1) the deceased was the assailant, (2) the accused had been assailed, and (3) the defendant was honestly seeking to defend himself. Accord: *Black v. State,* 230 Ga. 614, 615 (198 SE2d 314); *Curtis v. State,* 241 Ga. 125, 126 (243 SE2d 859). Following a discussion defendant's counsel asked the court: "So, you're denying my motion to present reputation for violence? THE COURT: Oh, I don't mind you doing it but specific acts . . . I don't think you can ever go into specific acts." Thereafter, the defense introduced additional evidence that the deceased was the aggressor and the defendant had been assaulted and the prosecutor conceded "I'm afraid that with his testimony he has at least set forth a prima facie case that he [the deceased] was the aggressor. . . . I would at this point just since it hasn't apparently, done any good with [defendant's counsel] earlier to admonish him that there have been no specific acts of aggression against this defendant shown and that his questioning will at this time have to be restricted to general reputation for violence and absolutely no specific acts against this defendant or anybody else can be shown. THE COURT: He understands that. I hope you understand that. [DEFENDANT'S COUNSEL]: That's right, yes."

The reference by the district attorney to the court admonishing the defendant's counsel earlier as not being effective referred to counsel attempting to lay the foundation for admissibility of general reputation of the deceased, and counsel asked the court if he could now "go into general reputation" and was cited for contempt. After putting on another witness counsel asked him why he ran and hid "without saying anything about the reputation of" the deceased — and was again cited for contempt. After his third citation for contempt he asked the court: "Have I laid a prima facie — THE COURT: You are attempting to provoke the Court and you're doing a

pretty good job of it, sir." At this juncture, counsel asked if he could "at least have a proffer of proof for the record . . ." The court did not respond but directed the counsel for the state: "You go ahead, sir."

It should have been evident to defense counsel — after three citations for contempt in attempting to lay a foundation for admission of the general reputation for violence of the deceased, and two negative rulings from the trial court on admission of specific acts of violence by the deceased against the defendant, and advised by the court with a curt: "I hope you understand that . . ." — that any further attempt to lay a foundation for specific acts would be futile and could provoke the trial court. In addition, as the topic of the excluded evidence was clear, i.e. acts of violence by the deceased against the defendant; and the attempt was being made by the defense, everyone was aware of what the anticipated answer would be. Accordingly, under this panoply of circumstances, we find it unnecessary for counsel to continue to insist upon an offer of proof to perfect his objection. See generally 88 CJS 181, Trial, §§ 75-77; *Athens Manufacturing Co. v. Malcolm,* 134 Ga. 600 (2) (68 SE 329).

" 'Where the evidence tends to prove that the accused acted in self-defense, evidence of the violent and dangerous character of the deceased, known to the defendant, is admissible as tending to characterize the acts of the deceased, as bearing on the reasonableness of defendant's apprehension of danger at the time of the homicide.' " *Milton v. State,* 245 Ga. 20, 24 (262 SE2d 789). This rule requiring prima facie proof of an assault by the deceased also applies in cases in which the defendant is seeking to prove his contention he reasonably believed he had to use deadly force to defend himself. Id. at 22.

Provocation by threats will not be sufficient to excuse the crime of murder, or reduce the homicide to manslaughter, when the taking of a life is done solely for the purpose of resenting the provocation, but when the killing is claimed to have been done on account of a reasonable fear in the mind of the slayer, threats accompanied by menaces, though the latter do not amount to an actual assault, may in some instances be sufficient to arouse the fears of a reasonable man that his life is in danger or that a felony is about to be perpetrated upon him. *Warrick v. State,* 125 Ga. 133, 136 (53 SE 1027); *Vernon v. State,* 146 Ga. 709 (3) (92 SE 76); *Jarrard v. State,* 206 Ga. 112 (6) (a) (55 SE2d 706); Accord: *York v. State,* 226 Ga. 281 (174 SE2d 418); *Moore v. State,* 228 Ga. 662 (1) (187 SE2d 277); see Code Ann. § 26-902 (a) (CCG § 26-902 (a); Ga. L. 1968, pp. 1249, 1272). In such cases the motive of the slayer is for determination by the jury, and if it is claimed the homicide was committed under the fears of a reasonable man it is for the jury to decide whether or not the

circumstances were sufficient to justify the existence of such fear. *Jarrard v. State,* 206 Ga. 112 (6), supra; *York v. State,* 226 Ga. 281, supra; *Moore v. State,* 228 Ga. 662 (1), supra; *Facison v. State,* 152 Ga. App. 645 (1) (263 SE2d 523).

For the jury to determine whether the asserted fear of the defendant in the instant case was that of a reasonable man, he should have been allowed to prove all of the prior acts of violence committed upon him by the deceased. *Daniels v. State,* 248 Ga. 591 (285 SE2d 516); *Milton v. State,* 245 Ga. 20, 24, supra; *Neal v. State,* 160 Ga. App. 498 (287 SE2d 399). "In cases of doubt as to whether or not evidence of prior difficulties should be admitted, the evidence should be admitted and its credibility and weight should be decided by the jury. *Warrick v. State,* 125 Ga. 133, 138 (53 SE 1027) (1906); *Jarrard v. State,* 206 Ga. 112, 114 (55 SE2d 706) (1949); *York v. State,* 226 Ga. 281 (174 SE2d 418) (1970)." *Milton v. State,* 245 Ga. 20, 25, supra; *Daniels v. State,* 248 Ga. 591, supra. The trial court erred in excluding prior acts of violence by the deceased against the defendant.

2. In enumerations of error 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 19, 32 and 36, defendant complains of the conduct of the trial judge in questioning his witnesses, making comments, assuming a prosecutorial role, and otherwise interjecting himself into the trial.

But, as the defendant made no motion for mistrial and entered no objection to the questions propounded (*Driggers v. State,* 244 Ga. 160 (2) (259 SE2d 133)) the question of whether or not Code Ann. § 81-1104 has been violated is not reached. *State v. Griffin,* 240 Ga. 470 (241 SE2d 230).

3. We have examined the remaining enumerations of error and find they are either mooted by the above holding, are without merit, or are unlikely to recur upon a new trial.

*Judgment reversed. McMurray, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 3, 1982 —
REHEARING DENIED MARCH 3, 1982 — 

*Christopher W. Duncan, Victoria D. Little,* for appellant.
*Robert Wilson, District Attorney, Michael Sheffield, Susan Brooks, Assistant District Attorneys,* for appellee.