23634.   CAMPBELL v. THE STATE.

*B. Hugh Ansley,* for appellant.

*Lewis R. Slaton, Solicitor General, Paul Ginsberg, Amber W. Anderson, J. Walter LeCraw, Arthur K. Bolton, Attorney General, G. Ernest Tidwell, Executive Assistant Attorney General, Carter A. Setliff, Assistant Attorney General,* for appelle.

Mobley, Justice. Gwendolyn Campbell was indicted, tried, and convicted of the murder of one Willie James Heard by shooting him with a pistol and was sentenced to life imprisonment. The appeal is from that judgment and sentence. She enumerates as error the overruling of her motion for new trial on the general grounds, and the refusal of the court to permit a witness to answer the question: "How many times have you seen the deceased with a pistol about his person?"

■ The general grounds. The accused admitted in her statement that she shot and killed the deceased, Willie James Heard, but stated that it was because he had hurt her and that she was not going to take any chance on him hurting her again, "I didn't intend to kill him, but I did. I was trying to stop him from hurting me." The evidence and statement of defendant would support the jury's finding that the deceased had a wife and children but at the same time was living with the defendant; that deceased's wife knew of it and had confronted the defendant and her husband while together, and he admitted it and said he intended to continue to live with both of them; that about three months before defendant shot and killed the deceased, he had, in an argument with defendant, shot her in the leg; that defendant told police she shot herself; that on the night before the killing, defendant, deceased, and another man occupied the same room in defendant's house, and defendant accused deceased of stealing $28 from her ($25 of which he had given her) and $16 from the other man. She told him she wanted him to stay away from her house. They engaged in a fight, she stating that he hit and pushed her and she hit and pushed him. At that time

and at the time of the killing, two women, both drunk, and another man, Willie Ballard, were in the house, none of whom testified in the case.

Calvin Hill, a cousin of the defendant, testified that as he entered the house, deceased and defendant were fighting with their hands; that neither had a weapon as far as he could see; that she left the front room and went into the middle room and the deceased then came into the middle room; that it was about five or ten minutes after the deceased went into the middle room before he was killed. While they were fighting, she did not have a gun and he had nothing in his hand that he, the witness, could see; that he heard defendant ask Willie Ballard for a gun; that defendant then came into the room with a pistol in her hand; that he, the witness, told her to put the gun down, but she did not do so; and, that the deceased was standing over in front of the heater with both hands in his pockets. The defendant said: "Willie, you done shot me once, what am I supposed to do about it?" So he said: "Shoot me back." So she said: "You mean shoot you?" "Yeah, shoot me" and she shot him. The gun snapped two or three times before it fired. The witness testified further that so far as he could see, the deceased had no knife or weapon of any kind at the time he was shot.

In her statement, the defendant said that she and Willie were fighting, that she pushed him away from her, that he was standing near "the shelf" and he reached up on the shelf, she didn't see him get anything, that she ran into the middle room and then into the front room and got the pistol from a drawer, went back into the middle room and shot Willie. Deceased owned the gun.

It is very difficult to tell from the testimony just what happened, but there was sufficient evidence to support the jury's verdict. How much time elapsed between the fight and the shooting is difficult to say, but the defendant left the room where she and the deceased were or had been fighting, went into another room, got the pistol, came back to the room where deceased was standing before the heater with both hands in his pockets with no weapon of any kind in his possession. She reminded him that he had shot her (which happened three months before)

and asked him "what am I supposed to do about it?" He said: "Shoot me," and she shot him.

The jury was authorized under this evidence to find that the defendant did not act in self-defense in shooting the deceased. In view of the evidence that he was unarmed, was standing with both hands in his pockets, and was making no effort to harm defendant when she returned from another room with his pistol and shot him, the jury could have concluded that she shot him in revenge for his having previously shot her, or could have found that there was a sufficient interval between the fight between them for the voice of reason and humanity to have been heard. *Code* § 26-1007.

Whether there was sufficient cooling time between the fight and the time she shot him to render the crime murder rather than manslaughter was a question for the jury to determine. "The jury are the sole judges as to 'cooling time.'" *Williams v. State,* 130 Ga. 400 (60 SE 1053); *Napper v. State,* 200 Ga. 626 (1) (38 SE2d 269). The jury resolved the question against the defendant.

■ The court, upon objection of the State, excluded the question: "How many times have you seen him, the deceased, with a pistol about his person?" The only relevancy of the question could have been to show general character for violence on the part of the deceased, which defendant was attempting to show. The court held that the question related to specific acts and excluded it for that reason; and, in our opinion, properly so. It is well established by decisions of this court that general character for violence of the deceased can not be established by specific acts. *Warrick v. State,* 125 Ga. 133 (6) (53 SE 1027); *Doyal v. State,* 70 Ga. 134 (5). A question as to the number of times the deceased had been seen with a pistol calls for specific acts, as each time would constitute a specific act. "Proof of violent and turbulent character of the deceased is admissible only when it is shown prima facie that the deceased was the assailant, that the accused had been assailed, and that the defendant was honestly seeking to defend himself." *Weaver v. State,* 200 Ga. 598, 605 (37 SE2d 802). See also *Smithwick v. State,* 199 Ga. 292, 295 (34 SE2d 28). At the time she shot the

deceased, he was not the aggressor as he was standing before the heater with both hands in his pockets. She knew where his pistol was, went to another room and got it, came back where he was, snapping the trigger two or three times before the gun fired.

This ground is without merit.

*Judgment affirmed. All the Justices concur.*

Argued September 14, 1966—Decided October 6, 1966.