## 62305. NEAL v. THE STATE.

MCMURRAY, Presiding Judge.

Defendant was indicted for the offense of murder of her husband. The jury returned a verdict of involuntary manslaughter, and defendant was sentenced to three and one-half years in confinement. After defendant's motion for new trial was filed and denied, defendant appeals. *Held:*

1. At trial during the state's questioning of one of its witnesses, a police officer involved in the investigation of the case, the following exchange occurred: "Q. Okay. And did you participate in that preliminary hearing? A. Yes, I did, sir. Q. And do you recall how the defendant pled on that date? A. Yes. Q. And how did she plead? A. Not guilty. Q. Not guilty. In other words, was she represented by an attorney? A. Yes. Q. Now, sir, on that day, was it brought to your attention, by anyone, including the defense attorneys that Donna Neal had been hearing voices? A. No, sir. That wasn't brought out in preliminary hearing, sir. Q. Was there anything at the preliminary hearing brought out that she had been hearing voices telling her that her husband was going to kill her? A. No."

Defense counsel objected to this line of questioning and moved for a mistrial and at the very least to have the questions and answers stricken, arguing that the exchange amounted to an impermissible comment upon the defendant's exercise of her right to remain silent. The trial court overruled both the motion for mistrial and the objection, declining to give curative instructions to the jury.

Defendant now contends that admitting this testimony was

harmful error under the authority of such cases as *Smith v. State,* 140 Ga. App. 385, 388 (3) (231 SE2d 83), and *Hall v. State,* 138 Ga. App. 20-21 (3) (225 SE2d 705). Both of these cases deal, not with the silence of a defendant at a preliminary hearing, but with the silence of the defendant at the time of his arrest. See also Doyle v. Ohio, 426 U. S. 610 (96 SC 2240, 49 LE2d 91).

The state, in turn, also fails to cite any cases dealing with a silence of a defendant at a preliminary hearing, but instead relies upon cases dealing with the permissibility of comment upon a defendant's failure to present evidence "to rebut the proof adduced by the state." *Holmes v. State,* 148 Ga. App. 817 (2) (253 SE2d 237). See also *Battle v. State,* 155 Ga. App. 541, 542 (4) (271 SE2d 679).

The difference in the results reached by the cases relied upon by the opposing parties in the case sub judice rests in part on the distinction between a comment on a defendant's silence which is constitutionally protected as opposed to the inference which arises from a failure to present evidence in one's defense when such would be reasonably expected. The testimony involved here is more in the nature of comment upon the defendant's failure to present certain evidence *at the preliminary hearing* as opposed to the defendant's individual exercise of her constitutional right to remain silent. Although this might seem to bring the case sub judice within the ambit of the cases relied upon by the state, the crucial question remains as to whether the silence of the defendant under the circumstances of the preliminary hearing is such as to be of some probative force on the question of whether the defendant's silence is an expression of agreement with contemporaneous statements of her accusers. "Silence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation. Failure to contest an assertion, however, is considered evidence of acquiescence only if it would have been natural under the circumstances to object to the assertion in question. 3A Wigmore § 1042." United States v. Hale, 422 U. S. 171, 176 (2) (95 SC 2133, 45 LE2d 99).

The purpose of a commitment hearing is simply to determine whether there is probable cause (sufficient reason to suspect) to believe the accused guilty of the offense charged, and if so, to bind the accused over for indictment by the grand jury. See Code Ann. § 27-407 (Ga. L. 1980, p. 415); *State v. Middlebrooks,* 236 Ga. 52, 54 (2) (222 SE2d 343). The state's burden at the commitment hearing is simply to show probable cause to believe the accused guilty, and if so, to bind him over to the grand jury for indictment, rather than to show guilt beyond a reasonable doubt, as at trial. An individual accused of

criminal misconduct might often determine as a matter of tactics or strategy that the presentation of a defense at this hearing would serve little or no constructive purpose. Indeed, it might impose a disadvantage upon the accused to prematurely disclose his defenses. Consequently, it cannot be said that it would be universally anticipated that the accused would object to the assertions contained in the accusation nor present his defense thereto. In such cases silence of the accused and the decision of the accused to present no evidence can carry no reasonable inference as to the accused's guilt. Such silence is ambiguous and of no probative value. The trial court erred in allowing this testimony, emphasizing such silence, to remain before the jury by overruling both the defendant's motion to strike (to be accompanied by curative instructions to the jury) and motion for mistrial.

2. Defense counsel attempted to introduce evidence as to previous instances between the defendant and deceased involving physical violence but was unable to present such evidence before the jury due to the trial court sustaining the state's objection on the basis that it was improper to introduce evidence as to specific instances of prior conduct by deceased. Defense counsel was permitted to make an offer of proof outside the presence of the jury, submitting the testimony of two of the defendant's sisters as to the instances involving loud arguments between deceased and defendant and of deceased striking defendant. One sister testified that, "I saw him [deceased] beating on her [defendant]. He had her over behind their bed, and he was beating on her like he was beating on another man [and] when he got off of her ... she had a few bruises on her face then." The other sister testified, "... I heard a lot of noise. So it's when I got up and went to their bedroom, and the door was like open, and that's when I saw Daniel [deceased] had Donna's [defendant] head like between her legs and was just beating on her." These instances as to which the offer of proof was made had occurred some seven years or more prior to the offense with which defendant is charged.

We first review the state's contention that there was no evidence of an attack being in progress upon the defendant by the deceased husband at the time she shot him. She testified that she had moved his gun because she was frightened he would use it upon her. Defendant testified that upon leaving she told the deceased she wanted to leave and all she wanted him to do was sit still until she left, that she fired at the wall to scare him and that he jumped up and ran around to the garage to let the dog out and she was scared of the dog (although there was evidence that the dog was merely a small puppy). Defendant testified that she fired again at the dog and by that time the deceased husband "was on me, and that is when we had a tussle."

Although the evidence as to these events is ambiguous, and defendant testified that she had a loss of memory as to the circumstances surrounding the critical moments, the above noted testimony is sufficient to present an issue as to whether defendant was being attacked by her husband at the time of the shooting and is corroborated in some degree in that one of the neighbors who witnessed some of these events heard a noise that sounded like a firecracker. She then saw two people "fighting" in the driveway. This neighbor testified that "[t]he person [male] in the white shirt was beating up on the other person that was in dark clothing."

There is no dispute that on a trial for murder evidence of prior difficulties between the defendant and the deceased is admissible in shedding light on the state of feelings between the accused and the deceased. In reviewing earlier cases on this point, we find the state has most commonly relied upon this rule for the purpose of presenting evidence as to defendant's motive, while defendants have presented such evidence for the purpose of showing the reasonableness of a defendant's apprehension of danger at the time of the homicide.

The remaining point of difference between the parties in the case sub judice relates to whether evidence involving previous instances between the deceased and the defendant which occurred at a point in time remote to the incident resulting in the homicide may be introduced into evidence under the above mentioned rule. The state, relying upon such cases as *Boling v. State,* 244 Ga. 825, 828 (5) (263 SE2d 437), argues that only "recent prior difficulties" between the defendant and the deceased are admissible for this purpose. However, we believe that "recent prior difficulties" is merely descriptive of the facts in the cases containing such language and is not intended to be restrictive. The correct rule is that the length of time intervening is only material as affecting the credibility and weight to be given such evidence. *Baker v. State,* 142 Ga. 619, 621 (83 SE 531). See also *Milton v. State,* 245 Ga. 20, 22-26 (262 SE2d 789). The trial court erred in excluding from evidence the testimony of defendant's sisters as to prior difficulties between the defendant and the deceased.

3. Code Ann. § 27-1503 (Ga. L. 1977, pp. 1293, 1295) requires that in all criminal trials where an accused contends that he was insane or mentally incompetent at the time the acts charged against him were committed that the trial judge instruct the jury that in case of acquittal on such contention to specify in their verdict that an acquittal on account thereof is because of mental incompetence or insanity at the time of the commission of the act. Due to the contention raised by defendant's evidence this issue was properly

charged to the jury in the case sub judice. Code Ann. § 27-1503, supra, also contains other provisions relating to the duties of the judge in those instances where the jury returns a verdict of acquittal because of mental incompetency or insanity at the time of the commission of the act. It has been held that it would be inappropriate to give the entire Code section including these additional provisions in charge to the jury. *Pierce v. State,* 231 Ga. 731, 733 (5) (204 SE2d 159). We note, however, that the giving of the entire Code section in charge to the jury although inappropriate, does not amount to harmful error requiring a reversal of the judgment. *Hulsey v. State,* 233 Ga. 261, 262 (210 SE2d 797).

During his closing argument to the jury the prosecutor stated in substance that if they returned a verdict of not guilty by reason of insanity that the defendant "is going to walk through that door," and also subsequently made reference to the collection of some $70,000 in insurance proceeds as to which evidence had been introduced at trial. Defense counsel made no objection under Code § 81-1009 as to this argument but did subsequently predicate an argument that the entire content of Code Ann. § 27-1503, supra, be charged to the jury in view of this allegedly improper argument, and when re-charge was refused defense counsel moved for mistrial based solely on the failure to re-charge, making no reference to the prosecutor's closing argument as the basis for the motion for mistrial. We decline to accept defense counsel's methodology in that it seeks to, in substance, address a supposed error in the prosecution's argument by giving in charge to the jury an otherwise inappropriate charge. The defense counsel's appropriate method of attack upon the prosecutor's arguments would have been an objection directed to that argument. As no such objection or motion for mistrial was made predicated upon the purportedly improper argument of the prosecutor any such impropriety in the prosecutor's argument was waived. *Brown v. State,* 110 Ga. App. 401, 407 (138 SE2d 741).

4. Defendant enumerates as error the refusal of the trial court to give in charge to the jury a written request to charge on the misdemeanor involuntary manslaughter provisions of Code Ann. § 26-1103 (b) (Ga. L. 1968, pp. 1249, 1276). This is referred to generally as the "lawful act-unlawful manner-involuntary manslaughter" charge. See in this connection *Crawford v. State,* 245 Ga. 89, 93 (263 SE2d 131). Defendant also had submitted a written request on involuntary manslaughter in the commission of an unlawful act. The trial court gave instructions as to an unlawful act other than a felony, defining a misdemeanor as "when he or she intentionally and without justification points or aims a gun at another." The evidence here involved testimony as to admissions by the defendant to police

officers with reference to her marital difficulties with her husband and particularly as to the day in question when he was shot; that he went to a closet looking for a gun which she had hidden in a new location. She, in turn, took the weapon from its new location and fired the gun once at the wall to frighten him. She then ran from the house and when she got to the bottom of the driveway the victim tried to "sic the dog" on her, and she shot at the dog, but did not hit it. She also stated that she shot in the victim's direction as he came at her and attempted to take the gun from her. He was wrestling the gun from her hand and scratched her hand. He then asked her to take him to the hospital claiming he had been shot, but apparently she did not believe that he had been shot, although in this conversation she did say that she shot him. However, thereafter when the oral statement was taken down by a stenographer the transcribed statement does not cover all that the police officer has given in testimony, she contending in the transcribed statement that she did not remember anything after he didn't find the gun in the closet. But she was then questioned further and she admitted the above in substance.

In contrast with the above testimony defendant testified as a witness in her own behalf. Her testimony is that when she took her husband's gun in her hand she thought it contained plastic bullets and she fired at the wall only to scare him. They later wrestled over the gun, and he tried to make her pull it on herself, and when she "twisted" he accidentally "turned the gun on himself." He then told her he had been wounded and asked for help, but she stated she did not take him to the hospital because she feared he would cause her to have an accident on the way there. Based upon the above, the trial court fully charged the jury on the subject of the death by misfortune or accident and that if the defendant did not intend to shoot the deceased but that the shooting was accidental, "then you would acquit this defendant of any criminal offense."

We are concerned here with whether or not the above testimony would have required a charge on the misdemeanor involuntary manslaughter provisions of Code Ann. § 26-1103 (b), supra. In *Crawford v. State,* 245 Ga. 89, 93, supra, the Supreme Court has reviewed a number of decisions of the Court of Appeals and the Supreme Court, and in that decision held that where the defendant asserts that he or she fired a gun in self-defense seeking to prove that the force used was excessive (the unlawful manner), "he or she is guilty of a crime, reckless conduct, Code § 26-2910, and thus the act is not a 'lawful act' within the meaning of Code § 26-1103 (b)." Here there was evidence of the intentional firing of the gun, allegedly in self-defense and if the jury believed that as a result thereof the victim was shot from which he died, the defendant could not claim the death

was unintentional (see her statements made to police officers). Nevertheless, she testified that she did not kill the victim but as they wrestled over the gun it was either *accidentally discharged* or he caused his own death in that "he turned the gun on himself," as it was being twisted in her hands. Accordingly, from this evidence adduced at trial the pistol either accidentally discharged or the victim caused his own death and the defendant never intentionally shot him. As was stated in *Mullins v. State,* 157 Ga. App. 204, 206 (276 SE2d 877), "the issue of involuntary manslaughter in the commission of a lawful act (self-defense) in an unlawful manner (excessive force) having been raised by the evidence and appellant having properly requested a charge thereon, the failure to so charge was error requiring a new trial." See cases cited therein in support of this ruling. Therefore, the court erred in failing to instruct the jury as to the misdemeanor involuntary manslaughter provisions of Code Ann. § 26-1103 (b), supra.

5. Defendant enumerates as error the trial court's ruling on the Jackson v. Denno (378 U. S. 368 (84 SC 1774, 12 LE2d 908)) hearing that defendant's oral statement to police was voluntarily and knowingly made. Defendant relies upon the testimony of a psychiatrist who had been treating the defendant for several months and testified for the defense that the defendant did not have the capacity to exercise the options presented to her in regard to the waiver of her rights, including the right to remain silent. The psychiatrist testified that the defendant's paranoid schizophrenia may have induced her to want to talk to the police.

In a Jackson v. Denno hearing the trial court is the finder of fact and its factual findings must be accepted by this court if there is any evidentiary basis reasonably authorizing such a conclusion. The rule in this state is in favor of the presumption of sanity. See in this regard *Carter v. State,* 225 Ga. 310 (168 SE2d 158); *Johnson v. State,* 235 Ga. 486, 490 (2) (220 SE2d 448). There is no requirement that a finder of fact accept expert opinion testimony such as that offered on behalf of defendant by the testimony of her psychiatrist even where such evidence is uncontradicted. See *Brooks v. State,* 157 Ga. App. 650 (278 SE2d 463), s.c. affirmed in 247 Ga. 744, 745 (280 SE2d 837); *Strickland v. State,* 247 Ga. 219, 220-221 (3) (275 SE2d 29). The trial court was authorized to conclude that defendant had made an intelligent, competent and knowing waiver of her right to silence.

6. Defendant's remaining enumeration of error deals with alleged misconduct of jurors during the course of trial which is unlikely to recur on retrial. Therefore, this enumeration of error need not be considered.

*Judgment reversed. Quillian, C. J., concurs. Pope, J., concurs in*

*the judgment only.*

DECIDED NOVEMBER 25, 1981.

E. Marcus Davis, Rosalyn S. Kadish, for appellant.
Lewis R. Slaton, District Attorney, Joseph J. Drolet, Russell Parker, Benjamin H. Oehlert III, Assistant District Attorneys, for appellee.