73582. EADY v. THE STATE.
73719. JONES v. THE STATE.
(355 SE2d 778)

DEEN, Presiding Judge.

Eady and Jones appeal their jury convictions and sentences on four counts of rape (OCGA § 16-6-1), four counts of armed robbery (OCGA § 16-8-41), five counts of burglary (OCGA § 16-7-1), and three counts of theft by taking a motor vehicle (OCGA § 16-8-2). Five incidents from June to September 1985 are involved.

1. Each appellant maintains he was entitled to directed verdicts on all counts but especially on the armed robbery counts, for lack of any evidence. Neither points out any element for which the evidence is deficient except with respect to armed robbery. Therefore, we need not relate the evidence as to the convictions for rape, burglary, and auto theft. It is sufficient to state that after a review of that evidence we find it ample to enable any rational trier of fact to find that each committed these offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Maddox v. State*, 170 Ga. App. 498, 499 (1) (317 SE2d 617) (1984).

a) Though defendants do not point to a defect in the evidence as to the armed robbery of victim McDowell, we have reviewed the evidence and find that it could have enabled a rational trier of fact to find that Jones and Eady had committed the armed robbery of Mc-

Dowell beyond a reasonable doubt. *Jackson v. Virginia*, supra.

b) Defendants urge that while victims. Bakhsh and Ballieu did have guns stolen, there was no allegation that either woman was threatened with a weapon. They cite *Rivers v. State*, 250 Ga. 288 (298 SE2d 10) (1982) for the proposition that a defendant "cannot be convicted of armed robbery where the offensive weapon used to perpetrate the armed robbery is also the only fruit of the armed robbery." Id. at 294.

Bakhsh testified that she was asleep on her couch when she was awakened by a feeling of being suffocated. A sheet from her son's bed had been placed over her face, her legs were being held, and someone was whispering in her ear to be quiet or they would kill her children. Two men led her into the bedroom and took turns raping her and then asked for money and any guns in the house. She told them where her purse was and that there were no guns. One man threatened that if she was lying, they would kill her, so she told them about a gun which they found. They informed her they were going to take her truck. One man put his hand under the cover, and Bakhsh could see a clear-gloved hand with a knife in it. He asked if she saw the knife and told her it would be at the foot of the bed and if she could find it, she could cut herself loose. The men took a shotgun, a television, change, and a gallon of orange juice. "[A]n armed robbery is committed if [a] weapon has been used as an instrument of constructive, as well as actual, force. [Cits.]" *Maddox v. State*, 174 Ga. App. 728, 729 (1) (330 SE2d 911) (1985). See also *Doby v. State*, 173 Ga. App. 348, 349 (1) (326 SE2d 506) (1985). The evidence was sufficient for the convictions for the armed robbery of Bakhsh.

Ballieu, a deputy sheriff, was awakened in the early morning hours by her dog barking. She walked into the kitchen and saw a man standing in the back door. When she spoke, he ran towards her, grabbed her by the top of the head and forced her to lie face down on the kitchen floor. She was struck on the head with her assailant's fist and placed in fear of her life; was tied up with scarves and panty hose; was raped; and then was robbed. After the rapes, one of the men ordered her not to tell what happened because he said he knew where her children went to school and had pictures of them. The men left, taking Ballieu's handbag, gun, and car. The jury's guilty verdict is supported by evidence here.

c) Defendants also argue that there was no testimony of any weapon used in connection with victim Tarrer. Defendants were charged with taking money from her by use of a sharp-bladed file. They further argue that the defective conviction for the armed robbery of Tarrer should have been the basis for a directed verdict on all counts because it showed that the jury could not properly do its job due to "overwhelming counts, cumulative testimony, and inadmissible

evidence which was permitted into the record."

The evidence reveals that Tarrer woke up when she heard a movement in the hallway like the shuffling of feet. She saw the shadows of two men in the hallway and screamed. They rushed into the room, clamped their hands over her mouth and told her not to scream. Tarrer's young daughter called out to her, and Tarrer told her she was having a bad dream and to go back to sleep. Tarrer told the men to shut and lock her bedroom door because she feared her daughter would come into the room and that the men would attack the daughter or make the daughter watch as they attacked her. She never had a chance to get off the bed and had no weapons to try to protect herself. The men then each raped Tarrer while keeping a pillow over her face, causing her difficulty in breathing. After the assault, and while still keeping the pillow on her face, the men bound her by rolling her up in a sheet and rummaged through the house. They took her purse and its contents and approximately $300 which Tarrer told them about in hopes they would leave.

"The term 'offensive weapon' includes not only weapons which are offensive per se, such as firearms loaded with live ammunition, [but] also embraces other instrumentalities not normally considered to be offensive weapons in and of themselves but which may be found by a jury to be likely to produce death or great bodily injury depending on the manner and means of their use . . . [Cit.]" *Hambrick v. State*, 174 Ga. App. 444, 445 (1) (330 SE2d 383) (1985). There was evidence that the pillow was used in such a manner as might have produced death or great bodily injury, i.e., by suffocation. While such things as a fist, a stick, a beer bottle, or a shoe are not per se deadly weapons, it is generally a jury question, under all the circumstances surrounding the way they are used. *Hambrick v. State*, 174 Ga. App. 444, supra; *Meminger v. State*, 160 Ga. App. 509 (287 SE2d 296) (1981) (overruled on a different point); *Quarles v. State*, 130 Ga. App. 756 (204 SE2d 467) (1974); *Williams v. State*, 127 Ga. App. 386 (193 SE2d 633) (1972). Here we cannot say as a matter of law that the way the pillow and sheets were used could not make them into deadly weapons. We affirm this conviction and sentence, also.

2. Eady contends that the committal judge erroneously bound him over without probable cause because three of the subpoenaed victims could not identify him.

Any questions as to the propriety of the finding of probable cause at the committal hearing are rendered moot by subsequent convictions for the offenses charged, for "[t]he purpose of a commitment hearing is simply to determine whether there is probable cause (sufficient reason to suspect) to believe the accused guilty of the offense charged, and if so, to bind the accused over for indictment by the grand jury. [Cits.]" *Neal v. State*, 160 Ga. App. 498, 499 (1) (287

SE2d 399) (1981), and even when there is a complete failure to hold a commitment hearing, there is no judicial oversight or review of the decision to prosecute, once an indictment is obtained. *State v. Middlebrooks*, 236 Ga. 52, 55 (2) (222 SE2d 343) (1976); *First Nat. Bank & Trust Co. v. State*, 137 Ga. App. 760 (224 SE2d 866) (1976), aff'd 237 Ga. 112 (227 SE2d 20) (1976).

3. Eady also claims that the trial court erroneously refused to quash the indictment upon his motion that he had been denied his rights to present evidence at the committal hearing. He does not state in what manner he was denied the presentation of evidence. During the proceeding he was represented by counsel.

Even if we assume that Eady was improperly prevented from presenting evidence, "an imperfect commitment hearing . . . did not authorize the trial judge to quash the indictment. . . ." *Day v. State*, 237 Ga. 538, 539 (1) (228 SE2d 913) (1976).

4. Eady and Jones argue that the trial court erred in refusing to sever for trial the case as to offenses and as to defendants.

a) Joinder of separate offenses in a single indictment is permitted where they " ' "(a) are of the same or similar character, even if not part of a single scheme or plan; or (b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." ' [Cit.] . . . ' "[W]henever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant *shall* have a right to a severance of the offenses." ' [Cit.] In other circumstances, the trial court has the discretion to grant a severance where it is deemed necessary or appropriate to achieve a ' "fair determination of the defendant's guilt or innocence of each offense," ' taking into consideration ' "whether in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." ' [Cit.]" *Thompson v. State*, 181 Ga. App. 163, 165 (351 SE2d 483) (1986).

The offenses in this case were not joined for trial solely on the basis that they were of similar character. They were properly joined because they constituted a series of criminal acts closely connected by geography, time, and manner so as to constitute a scheme or plan of criminal conduct. See *Johnson v. State*, 158 Ga. App. 398, 400 (4) (280 SE2d 419) (1981). Moreover, the offenses charged were not so numerous or the evidence so complex that, prior to trial, the court could find that the trier of fact would be unable to distinguish the evidence and apply the law intelligently as to each offense. Id. There was no abuse of discretion by the trial court in refusing to sever the offenses.

b) Nor do we find that the trial court abused its discretion in

refusing to sever the case as to the defendants. OCGA § 17-8-4; *Stevens v. State*, 165 Ga. App. 814, 816 (3) (302 SE2d 724) (1983). Severance was not necessary to achieve a fair determination of the guilt or innocence of the defendants. *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975). Significant factors to consider are whether or not the number of defendants will create confusion of the evidence and law applicable as to each defendant, whether there is a danger that evidence admissible against one defendant will be considered against another despite the admonitory precaution of the court, and whether the defendants' defenses are antagonistic to each other or to each other's rights. Id. at 129. See also *Owens v. State*, 251 Ga. 313, 320 (8) (305 SE2d 102) (1983); *Jackson v. State*, 249 Ga. 751, 757 (6) (295 SE2d 53) (1982); *Kelley v. State*, 248 Ga. 133, 135 (3) (281 SE2d 589) (1981); *Myrick v. State*, 155 Ga. App. 496 (1) (271 SE2d 637) (1980); *Jones v. State*, 243 Ga. 584, 586 (4) (255 SE2d 702) (1979).

Defendants argue that severance was mandated because the case was complex, because of the limited admissibility of certain testimony, and because of incompatible defenses. The defendants' acts were inextricably bound as a matter of fact. In addition the issue of identity was the basis of the defense of both defendants. Defendants' argument for necessity of severance of their trials is without merit.

5. Eady maintains that the court erred in denying his motions for funds for an independent psychiatric evaluation.

"[W]here a showing is made that the defendant's sanity is likely to be a significant factor at trial, the state is required to provide an indigent defendant with access to the assistance of a competent *psychiatrist* in preparing the defense." *Lindsey v. State*, 254 Ga. 444, 448 (330 SE2d 563) (1985) discussing *Ake v. Oklahoma*, 470 U. S. 68 (106 SC 1087, 84 LE2d 53) (1985). However the mere filing of a motion does not constitute a preliminary showing that sanity at the time of the offense is likely to be a significant factor at trial. Id. at 448.

Following Eady's motion, the court ordered a psychiatric evaluation of the defendant. The evaluation stated that Eady was competent to assist in his defense and fully aware of the pending charges, though he was somewhat mildly retarded, and further that Eady did not suffer from any mental illness which would hinder him from knowing right and wrong or any delusions or compulsions which would hinder him from acting in a right manner. The report went on to opine that Eady's behavior was due to personality disorders not treatable in a hospital setting.

After receiving the evaluation, the court denied Eady's motion for funds for an independent evaluation. Under the circumstances we see no abuse. *Lindsey v. State*, supra.

6. Both defendants maintain that the trial court erred in refusing to quash their in-custody statements following a *Jackson-Denno*

hearing.

The gist of defendants' argument is that they were prompted to confess because the intervening officers led them to believe that conviction of the offenses for which they were being charged carried the death penalty, and that they confessed to assure that they would not receive it. Eady contends that an additional factor in his confession was that he was told his sister's criminal activity would be dealt with more harshly.

At the *Jackson-Denno* hearing, Eady testified that he would not have made his statements but for threats of the death penalty and prison for his sister. He further testified that he believed the officers would go to the district attorney to ask for probation for him. Jones also testified that he confessed because of fear of the death penalty.

The interviewing officer who mentioned the death penalty testified that while he indicated that the offenses charged were capital ones, he stressed that under the circumstances of the four cases there was no possibility that the death penalty would be imposed. Furthermore, there was testimony that Eady was told that his sister would be arrested for hindering his apprehension, but there was no evidence of suggestion that the sister's fate would be affected by his confession.

At the close of the hearing the court denied the motions to suppress the confessions. Implicit in the ruling is the court's finding that the statements were freely and voluntarily made, without hope of benefit or reward. OCGA § 24-3-50; *Head v. State*, 180 Ga. App. 901, 902 (1) (350 SE2d 854) (1986). In reaching this determination, the court sits as the trier of fact and it must decide the credibility of the witnesses. *Herkert v. State*, 177 Ga. App. 610 (1) (340 SE2d 251) (1986). Our role is to determine whether or not the trial court's ruling was clearly erroneous, *Lovell v. State*, 179 Ga. App. 98, 99 (1) (345 SE2d 645) (1986), and we find that it was not.

7. Eady and Jones maintain that the trial court "erred in refusing to dismiss the indictment because of the District Attorney's misconduct in speaking with the press on the eve of the trial after the District Attorney, through his assistant, had been warned against such conduct.

The controversy ensued after a March 14, 1986 newscast by a local network, prominent in Dougherty County, which in essence stated that the district attorney's office had worked out a plea bargain agreement with Eady and Jones, whereby they would plead guilty to the pending charges of rape, burglary and theft, each receive two twenty-year sentences to be served consecutively, and that they then would not be tried for a pending aggravated assault charge in connection with the January 1984 shooting of a boy who was left paralyzed by the incident. The reporter's sources were the District Attorney and the assault victim's father.

The court heard the motions for dismissal and for change in venue. While it denied dismissal of the indictment, it did grant a change of venue to the extent that the jury was selected in Bibb County, apparently outside the viewing area of the channel which broadcast the story, and then transported to Dougherty County for the actual trial of the case. This resolution of the motions, after consultation with defendants' attorneys, constitutes no error in that defendants have shown no harm by the objected-to newscast. *Durham v. State*, 179 Ga. App. 636, 637 (4) (347 SE2d 293) (1986).

8. Defendants contend that the trial court erroneously allowed Adams to testify about certain incriminating statements which he overheard while transporting the defendants from the jail to a hospital for tests. Jones and Eady argue that the substance of their conversation was not timely disclosed under the mandate of OCGA § 17-7-210, that the statement included references to sentencing, that no *Miranda* warning was given and therefore that the alleged conversation infringed Jones' right to remain silent, and that Eady's rights were likewise violated because Jones' comments were imputed to Eady.

The conversation occurred in October 1985, at which time Adams reported it to some detectives and a crime scene technician. However, Adams did not write down a summary of the conversation until April 1986. In December 1985 defendants made a motion for discovery and disclosure under OCGA §§ 17-7-210, and 17-7-211. The state argues that it did not violate the mandate of OCGA § 17-7-210 because subsection (e) declares that the 10-day rule of proffer of evidentiary statements does not apply to evidence discovered after a request has been filed and that upon the state's discovery of the new evidence, notice was timely given to defense counsel.

Though it is clear that Adams reported the conversation prior to the disclosure request, it is apparent that there was no attempt to document the incident until well after the request. Therefore there was nothing for the state to produce under OCGA § 17-7-210.

Furthermore, the conversation was spontaneous and not in response to any interrogation or prodding by Adams. Therefore, there is no *Miranda* violation. *DeLoach v. State*, 175 Ga. App. 708, 710 (334 SE2d 35) (1985).

9. Defendants contend that the trial court erred in failing to grant a mistrial after certain "inflammatory comments" by the district attorney and in particular, his use of the term "brutalized."

During cross-examination regarding a recovered cable converter box which had been leased to victim McDowell, the district attorney stated: "Well, for Your Honor's judgment, as far as the State is concerned, the only issue here and it has already been handled by this witness and that is whether or not this is a cable converter leased to the lady who was brutalized in her apartment." Defense counsel re-

quested removal of the jury and asked for a mistrial on the basis of improper comment by the state. The court found that it was "right on the borderline," overruled the motion, and admonished the district attorney to use the proper language or it would be compelled to declare a mistrial.

No further request for curative action nor renewed request for mistrial was made, and the objection was waived. *Kirksey v. State*, 177 Ga. App. 428, 430 (3) (339 SE2d 401) (1986).

10. Defendants argue that the trial court erred in charging over objection the lesser included offense of robbery by intimidation. OCGA § 16-80-41 (a).

The evidence justified a charge on robbery by intimidation. *Jackson v. State*, 175 Ga. App. 843 (334 SE2d 731) (1985). Moreover, the charge was favorable to defendants since they were charged with the greater offense of armed robbery. Therefore, they can demonstrate no resulting harm. *Wyatt v. State*, 179 Ga. App. 327, 328 (1) (346 SE2d 387) (1986).

11. Lastly, Eady and Jones contend they are entitled to a new trial because under the "totality of the circumstances" the trial was fundamentally unfair and therefore they were denied due process. Defendants then go through a recital of their prior enumerations of error, arguing that the aggregate of asserted error amounts to a fundamentally unfair trial.

We are unable to agree with defendants that the trial was fundamentally unfair. The contention is without merit and defendants' remaining convictions stand. *Campbell v. State*, 181 Ga. App. 1, 3 (2) (351 SE2d 209) (1986).

*Judgments affirmed. Birdsong, C. J., Banke, P. J., Carley, Sognier, Pope and Benham, JJ., concur. Beasley, J., concurs in part and dissents in part. McMurray, P. J., concurs in the judgment of the dissent only.*

BEASLEY, Judge, concurring in part and dissenting in part.

I agree with everything that is contained in the opinion except that I do not find evidence sufficient to support the armed robbery convictions of these two men with respect to victims Ballieu and Tarrer. While there is ample evidence of robbery, OCGA § 16-8-40, there was no evidence that they took the property "by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41.

As to Ballieu, the majority states that she was struck on the head with her assailant's fist. I find in the record only the following two relevant portions of evidence, which was her testimony. First, when one man entered her back door, "he grabbed me and he grabbed me by the top of my head and forced me down on the floor of the kitchen

where I had to lay face down."

Second, when she was taken from the kitchen to the bedroom: "he pulled me off the floor and led me, after they had tied my head with several scarves and some pantyhose into my room and laid me down across my bed. At this time, he tried to take my clothes off, and I resisted, and he struck me at least two times on the side of the head here (indicating) and told me to shut up. . . ."

As to Tarrer, she testified, beginning with the rape episode: "all the while, they had stuffed a pillow over my face and I couldn't breathe very well and I sort of pushed up at the pillow to get it a little bit where I could breathe, and I had a view like this (indicating). . . . [W]hen they were through sexually assaulting me, they rolled me up in a sheet as if they were tying me up and they kept the pillow in my face all the time and then they went back toward my kitchen and I could hear them banging around in there and it sounded like they were looking in drawers to see what they could rob or whatever. . . ."

I am of the opinion that this evidence does not support the finding in each case of the use of "an offensive weapon," which element is essential to raise robbery to the more severe crime of armed robbery. Robbery by force, or robbery by intimidation, by the use of threat or coercion, or by placing the victim in fear of immediate serious bodily injury does not become armed robbery unless an offensive weapon is used.

To find *armed* robbery of Ballieu and Tarrer on the evidence here is to blur any meaningful distinction between the two crimes.

DECIDED MARCH 20, 1987.

*William H. Hedrick*, for appellant (case no. 73582).
*Carl A. Bryant*, for appellant (case no. 73719).
*Hobart M. Hind, District Attorney, Melodie B. Swartzbaugh, Assistant District Attorney*, for appellee.