A89A0195. LARKIN v. THE STATE.
(381 SE2d 421)

SOGNIER, Judge.

Billy F. Larkin appeals his convictions for armed robbery, two counts of theft by taking, and simple assault. Three incidents from August to November 1986 are involved.

Construed to support the verdict, the evidence adduced at trial showed that at approximately midnight on August 13, 1986, Gloria Rahiser, a guest at the Ramada Inn Central in Atlanta, returned to her hotel room after visiting her son at Piedmont Hospital. As she entered her room, a man with a white object in his hand came up behind her and demanded her purse. She refused, and the man hit her behind the ear with the white object, knocking her unconscious. When she awakened, she found her purse had been pulled from its shoulder straps and was gone. The purse contained four hundred dollars in cash, traveler's checks, a gold cross, credit cards including a telephone calling card, and her son's will. Rahiser testified that several months after her purse was taken, she received a bill for long

distance telephone charges she had not made, and she sent copies of the bill to the Atlanta police. At a photographic lineup several months later, Rahiser positively identified appellant as the perpetrator of the robbery.

On August 27, 1986, Benadette Garigliano was staying at the Ramada Inn Central with her husband and other family members to attend a wedding. During the daylight hours she took a walk with her sister. As she returned to her room, the door to her room opened and a man walked out. She screamed and her sister pursued the man to try to stop him but was unsuccessful. Her husband's wallet and her grandfather's gold pocket watch were missing from the room. A passer-by found the wallet in the bushes, but the watch was never recovered. Garigliano testified that she got a very good look at the perpetrator, whom she positively identified as appellant at a photographic lineup several months later.

Manette Yvette Smith testified she was having an affair with appellant, and would travel to Atlanta from Augusta and stay with appellant in the various hotel rooms rented by him. On November 13, 1986, they were staying at the Red Carpet Inn in the same neighborhood as the Ramada Inn Central. Smith testified that although she had been seeing appellant for several months, on that occasion appellant demanded that she give him her diamond and gold rings, and that when she refused, he choked and pushed her and took the rings. Juanita Johnson, the general manager of the hotel, testified that Smith reported to her that appellant had taken the jewelry, and that Smith was upset and had red marks on her throat. George Matthews, the assistant manager, testified that the following morning he observed appellant come into the lobby and knock a cup of coffee out of Smith's hand. When appellant inquired if Matthews had telephoned the police and Matthews answered that he had, appellant shouted obscenities at Matthews and stated that he was going to kill him. Appellant pointed his finger directly in Matthews' face, and in retreating from appellant and trying to avoid the blow, Matthews hit his head on the wall.

Larry Loy, an Atlanta Police Officer, testified that he was hired by the Ramada Inn Central as a security officer, and that over a period of time he had observed appellant at the hotel under suspicious circumstances, and had several confrontations with appellant. After one such confrontation, he obtained from a taxi driver the address where appellant had gone when he left the hotel. He went to that apartment to execute a search warrant, and did so after the owner of the apartment signed a "consent to search" form. Loy found a number of items belonging to appellant in a closet and also observed a man's gold pocket watch and chain but did not seize the watch at that time because he had no information regarding the Garigliano theft.

Loy testified that Rahiser had sent him copies of her AT&T Calling Card bill containing the calls she knew she had not made. Loy telephoned an Alabama number appearing on the bill, and reached someone who identified herself as a relative of appellant.

1. Appellant enumerates the general grounds. Although appellant testified at trial that he was not the person who had committed the offenses against Rahiser and Garigliano, both victims identified him positively as the perpetrator of the crimes against them, and there was no showing that the photographic lineups were tainted in any way. "The credibility of witnesses and the weight to be accorded their testimony is the sole province of the jury. [Cit.]" *Herndon v. State*, 187 Ga. App. 77, 78 (4) (369 SE2d 264) (1988). Although there may have been some question whether the "white object" described by Rahiser as the weapon used to knock her out was an offensive weapon within the meaning of OCGA § 16-8-41 (a), Rahiser testified that she was sure it was not appellant's fist, and " '[t]he term "offensive weapon" includes not only weapons which are offensive per se, such as firearms loaded with live ammunition, (but) also embraces other instrumentalities not normally considered to be offensive weapons in and of themselves but which may be found by a jury to be likely to produce death or great bodily injury depending on the manner and means of their use . . . (Cit.)' [Cit.]" *Eady v. State*, 182 Ga. App. 293, 295 (1) (355 SE2d 778) (1987). The question was one for the jury, id., and the jury was authorized to resolve it against appellant. We find the evidence sufficient to enable a rational factfinder to convict appellant of armed robbery as to Rahiser, and of theft by taking as to Garigliano. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Appellant's defense in the Smith incident was that she had given him the rings in exchange for sex. Smith's testimony was bolstered by that of Johnson and Matthews, and conflicted with appellant's testimony. The indictment charged appellant with robbery as to this offense, but the trial court charged the jury on the lesser included offense of theft by taking, and the jury returned a verdict of guilty of the lesser offense. Although the evidence was in conflict, " '[t]he credibility of a witness is a matter for the trier of fact, and this court will not disturb the jury's finding unless it is insupportable as a matter of law. (Cit.) Since we do not find that to be the situation in the case at bar, we will not disturb the jury's finding.' [Cit.]" *Burroughs v. State*, 186 Ga. App. 40, 41 (1) (366 SE2d 378) (1988).

Appellant was charged with terroristic threats and acts as a result of his conduct with regard to Matthews. At defense counsel's request, the trial court charged the jury on simple assault as a lesser included offense of terroristic threats and acts. OCGA § 16-5-20 (a) (2) provides that a person commits simple assault when he "[c]ommits an

act which places another in reasonable apprehension of immediately receiving a violent injury." The evidence adduced at trial was sufficient to enable a rational trier of fact to convict appellant of simple assault. *Jackson v. Virginia*, supra.

2. Appellant enumerates 11 other grounds for reversal. As to each, appellant has failed to support his enumeration by reference to the record or transcript as required by Court of Appeals Rule 15 (c) (3) (i), nor has he cited any authority for his position. Moreover, as to most, if not all, of these enumerations, appellant has not argued his enumeration, other than repeating the enumeration itself, and thus under Court of Appeals Rule 15 (c) (2) appellant must be deemed to have abandoned these enumerations. *Watson v. State*, 153 Ga. App. 545, 549 (4) (265 SE2d 871) (1980); *Curtis v. State*, 182 Ga. App. 388, 389 (3) (355 SE2d 741) (1987). Nevertheless, we have reviewed these enumerations and find them all to be without merit.

*Judgment affirmed. Banke, P. J., and Pope, J., concur.*

DECIDED APRIL 6, 1989.

*Michael A. Zoffman*, for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, R. Andrew Weathers, Assistant District Attorneys*, for appellee.