## A92A2374. ADCOCK v. THE STATE.
(430 SE2d 606)

ANDREWS, Judge.
Janice Adcock was convicted of two counts of incest in violation of OCGA § 16-6-22 and appeals. In her sole enumeration of error, she

claims that the trial court erred by admitting into evidence statements she made during a prior civil proceeding. She claims that the statements were made involuntarily and the trial court's admission of them violated her constitutional rights against self-incrimination.

The case arises out of the following facts. On or about October 5, 1987, Ms. Adcock filed a complaint for paternity against her natural father, Wilson Adcock, alleging that he was the biological father of her child and requesting that the court order him to pay child support.[1] On November 6, 1987, a temporary support hearing was conducted. During the course of the hearing, the court on its own motion called Ms. Adcock as a witness. Although Ms. Adcock had admitted in her complaint that her son was the product of an incestuous relationship, she claims that she had made no admission which would have subjected her to criminal prosecution within the applicable four-year limitation period.

Ms. Adcock's paternity complaint specifically stated: "[t]hat Wilson Adcock is the natural father of petitioner, thus the child is a product of an incestuous union between the petitioner and her father. . . . Plaintiff, Janice Adcock, further shows that she and defendant WILSON ADCOCK, lived together continuously during the past ten years and that defendant had sexual intercourse with her frequently during said period of time and that she has had no sexual contact with any person other than defendant during said period. . . ."

When the trial judge called Ms. Adcock to the witness stand, he asked her a number of questions regarding the child, the relationship between Ms. Adcock and her father, and the circumstances under which the child was born. Then the following transpired:

"THE COURT: And after the baby was born [in 1980], did you all continue to engage in sexual intercourse?

ADCOCK: Yes, sir.

THE COURT: When was the last time you had sexual intercourse?

MR. FULLER [Ms. Adcock's attorney]: Your Honor, if I might interrupt at this time, and I apologize for doing so, — as but we have — the nature of the petition is as to Your Honor has stated it, and we are aware, and Janice is aware, that incest is a crime.

THE COURT: Yes, sir.

MR. FULLER: She has alleged both a crime on her part and a crime on the part of her father. I would like to advise her as to her constitutional rights with regard to that, within the Statute of Limita-

---

[1] Although somewhat unclear from the record, it appears that during this same time period Ms. Adcock also filed a civil suit for damages against her father.

tions. It is not necessary that she admit the crime within the Statute of Limitations to complete —

THE COURT: Yes, sir, but you're not going to have your cake and eat it too, Mr. Fuller. She also has alleged that she did this because she was under the fear —

MR. FULLER: Yes, sir.

THE COURT: — which may — I don't know what the District Attorney's office — what their attitude will be about it, but this Court cannot sit up here and let . . . when I read it I was shocked, and I'm not saying the facts are true.

MR. FULLER: Yes, sir, I understand, and Your Honor, I have discussed with her fully the potential criminal liability for bringing these charges.

THE COURT: And I think if she takes the Fifth Amendment, she might as well just dismiss her lawsuit.

MR. FULLER: Well, Your Honor, we're not going to dismiss the lawsuit, and we are willing to face whatever the law has for us to bear in this matter.

THE COURT: I think you're entitled to a — all of this goes to the fact.

MR. FULLER: I agree with you. Answer his question.

THE COURT: When is the last time you had sexual relations with your father, I'm not trying to frighten you?

MS. ADCOCK: I understand that, I'm trying to think.

THE COURT: Has it been in the last year?

MS. ADCOCK: Yes, sir, it was back . . . it was either in May or June.

THE COURT: Of 1987?

MS. ADCOCK: Yes, sir."

Ms. Adcock prevailed in both her paternity action and in the other civil suit. Subsequent to the November 1987 hearing, in August 1988, the grand jury indicted the appellant and her father on two counts of criminal incest. The indictment charged that between January 1, 1977 and September 15, 1984, Adcock had engaged in sexual intercourse with her father, Wilson Adcock, and that the crime of incest had been unknown until September 27, 1987. The second count charged that the two had engaged in sexual intercourse between September 16, 1984 and September 16, 1987. Appellant's father was tried and convicted of these counts on January 27, 1989. That case was appealed in *Adcock v. State*, 194 Ga. App. 627 (391 SE2d 438), aff'd 260 Ga. 302 (392 SE2d 886) (1990).

Before appellant's criminal trial, she filed a motion to suppress her prior incriminating statement. She claimed that she had been inadequately advised of her right against self-incrimination and that there had been some indication that she would receive immunity from

prosecution. The court held a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). There was evidence that during the civil suits against her father, Adcock had been informed by the attorney who represented her during the paternity suit of her constitutional rights against self-incrimination and that her attorney had informed her that he did not believe it would be necessary for her to testify regarding incest within the period of limitations. Despite their discussions regarding the fact that the paternity suit was based on a crime, Adcock's attorney testified that he did not inform Adcock of her right to refuse to testify about recent acts of incest during the November 6 hearing. He admitted that he neither stopped her from testifying during the hearing, not did he assert her Fifth Amendment right. The trial court determined that her statements were admissible.

Ms. Adcock was tried on the criminal charges on November 13, 1991. She did not testify at trial. The State introduced portions of her testimony from the November 6, 1987 temporary support hearing. Adcock claims that her statement was erroneously admitted and that in the absence of it there was insufficient evidence to find her guilty beyond a reasonable doubt.

At the outset we note that the trial court's findings regarding the voluntariness of the statement will be upheld unless clearly erroneous. *Tyler v. State*, 247 Ga. 119, 123 (2) (274 SE2d 549) (1981).

Adcock first argues that her statements were self-incriminatory, were compelled by the court and were inadmissible in the instant criminal action, in violation of her Fifth Amendment privilege. Citing *United States v. White*, 589 F2d 1283 (5th Cir. 1979), she argues that the court's inquiry was not relevant to the civil matter and that the court's questions were improper.

In *White*, the court held that uncounseled inculpatory testimony which White gave in a civil case in ignorance of his Fifth Amendment privilege was admissible at White's criminal trial. In *White* the facts which the court emphasized were critical to its holding were that White wanted to testify in the civil case, that White was aware at the time of testifying that an indictment was pending, and that White was not compelled to take the witness stand.

Adcock claims that the facts here differ from those in *White* and mandate à different result. She argues that in the instant case her testimony at the November 6 hearing was at the court's behest and that she was indicted *after* the civil testimony and that the *White* rationale does not apply.

For a number of reasons, we find Adcock's arguments without merit. Aside from the fact that appellant was not in custody during the questioning and was represented by counsel during that time, and pretermitting questions regarding the sufficiency of the objection her

attorney raised during the civil suit, Adcock's arguments here ignore the chief operative fact — that she voluntarily filed a civil paternity suit, which suit was based on the conduct which she now claims she was compelled to admit. From this starting point, we conclude that her testimony was voluntary. It is nonsensical to assume that one can file a civil suit based on criminal conduct and not be questioned regarding the relevant facts to the suit. Although the facts in this case are different from *White,* here Adcock was *more* in control of her decision to testify than in *White* in that she had instigated the lawsuit in which the questioning to which she now objects became relevant. (Regarding voluntariness see generally *Smith v. State,* 190 Ga. App. 702 (379 SE2d 643) (1989); *Whittington v. State,* 252 Ga. 168 (6) (313 SE2d 73) (1984); see generally *State v. Dictado,* 687 P2d 172 (Wash. 1984).)

Adcock's argument that the court's inquiry into the incestuous relationship within the statute of limitation was irrelevant to the suit is meritless. Adcock's own complaint stated that she had lived with her father continuously during the past ten years and that her father had sexual intercourse with her frequently during that period.

Adcock also argues that her testimony was inadmissible at the criminal trial since it was compelled by the court under the implied threat of substantial economic sanction. She claims that her decision to file the action was based on the fact that she was financially destitute and that her need for money eliminated her choice regarding testifying. In addition to the fact that there is no direct evidence in the record regarding the alleged economic threat, we find this enumeration without merit. Although OCGA § 24-3-50 provides that to make a confession admissible, "it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury," the "fear of injury" referred to in that section does not extend to the facts of this case. See generally *Ramos v. State,* 198 Ga. App. 65 (1) (400 SE2d 353) citing *Hall v. State,* 180 Ga. App. 366 (1) (349 SE2d 255) (1986); see also *Johnson v. State,* 170 Ga. App. 71 (2) (316 SE2d 160) (1984); OCGA § 24-3-51.

*Judgment affirmed. Birdsong, P. J., Carley, P. J., Johnson and Blackburn, JJ., concur. Pope, C. J., McMurray, P. J., Beasley and Cooper, JJ., dissent.*

BEASLEY, Judge, dissenting.

I respectfully dissent.

The question is whether Fourteenth Amendment due process required that a certain portion of the defendant's testimony at the civil proceeding be excluded from the criminal trial because it was involuntary and in violation of her right against self-incrimination.

Although appellant mentions the state constitutional provision as

well as the Fifth Amendment self-incrimination clause, her argument is based on the federal standard, as it was in the trial court. Thus the case is not analyzed on the state constitutional ground, Ga. Const. 1983, Art. I, Sec. I, Par. XVI, which provides: "No person shall be compelled to give testimony tending in any manner to be self-incriminating." Nor does appellant invoke as a ground the statutory standard, OCGA § 24-3-50, which properly should have been the first line of defense and the first inquiry, even before the State Constitution need be called to arms or addressed. For if a specific state statute provides the relief sought, it is not necessary to invoke the more general measurements of the constitutions. See Clarke, "Independent State Grounds: How to Win Through the First Door Out," 23 Georgia State Bar Journal 183 (May 1987); Linde, "First Things First: Rediscovering the States' Bills of Rights," 9 U. Balt. L. Rev. 379 (1980).

As to the evidence complained of, although the majority refers first to what appellant alleged in her civil complaint, which allegations did embrace activity within the four-year statute of limitation, OCGA § 17-3-1 (c), that is not at issue. The complaint, which apparently was not sworn to by her, was not offered in evidence in the criminal trial. The hearing testimony which is at issue related to her complaint for paternity and child support for her son, who was seven years old (dob 5/13/80) when she filed the complaint on October 5, 1987. Any sexual relations she had with the father after the birth of the child were irrelevant to the issues in that case, as such would not affect paternity or entitlement to, or amount of, child support. Appellant's other suit against the child's father claimed incest as a tort, but the record contains nothing which would show that sexual relations within the statute of limitation were relevant in that suit either. It was filed on September 16, 1987, as recounted in *Adcock v. State*, 194 Ga. App. 627 (391 SE2d 438) (1990).[2]

Nevertheless, the court in a hearing on paternity and support, after first calling for the district attorney to listen in, required testimony from the petitioner and now criminal defendant concerning sexual intercourse from the time of the child's birth to the most recent instance. This constituted confession of a crime (see *Johnson v. State*, 204 Ga. 528 (50 SE2d 334) (1948)), and was objected to on two bases, that counsel wished first to advise her of her rights against self-incrimination as to any still-indictable activity and that such evidence was unnecessary to prove her case. However, the court made its position very clear: if the Fifth Amendment right against self-incrimination were invoked, she "might just as well dismiss her lawsuit."

---

[2] This is the date the State alleged it learned of the early intercourse in Count 1, so as to survive the statute of limitation, and likewise the date the State alleged as the last intercourse, in Count 2.

During the course of the criminal trial, the court conducted a hearing to determine whether the confession was voluntary, because under the invoked Fourteenth Amendment, the use of involuntary or coerced confessions violates due process of law. *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). This occurred prior to introduction of that portion of the transcript of the civil proceeding which contained her confession. Her civil attorney testified that in preparing the civil paternity and child support action, he had advised Ms. Adcock that she would not have to admit the crime of incest as having occurred any time within the statute of limitation in order to make out the case, and he "would not allow her and she would not have to testify and incriminate herself." He explained that then, as shown by the civil transcript, the court in that proceeding interrupted and asked her questions requiring self-incrimination, to which counsel objected as stated above. He testified that he attempted to invoke the Fifth Amendment privilege but that the judge "very vociferously and very emotionally told me that we weren't going to have this [paternity and child support] case, that we weren't going to be allowed to proceed with this case if we did claim the 5th Amendment. That was my understanding, and I felt the case was so vital, she had a child that was not being supported, she was almost financially destitute at that time, she could not support herself. . . ." He said she had come to him "in a state of total psychological devastation." On hindsight, he said he should have insisted on her privilege even if it meant his going to jail, but he felt intimidated by the court and did not want to give up the paternity and child support case.

Thus Ms. Adcock as civil petitioner was compelled to answer the court's questions, not knowing that she *could* still invoke the privilege and that doing so would not legally affect the child's right to support and a determination of paternity. The criminal court's implied finding of voluntariness is clearly erroneous, which is the test to be applied to that finding when reviewed on appeal. *Eady v. State*, 182 Ga. App. 293, 298 (6) (355 SE2d 778) (1987). Unlike the circumstances in *United States v. White*, 589 F2d 1283 (5th Cir. 1979), which the court below relied on in ruling that the evidence was admissible, the civil trial judge, not defendant, instigated her testimony by calling her on his own motion and compelled it over valid objection, there was no indictment pending against her, and she was in effect told by the judge that the suit for paternity and child support would be lost unless she answered his questions.

Although it is true that defendant was represented by counsel at the time the civil court questioned her, counsel was not permitted to advise her of her self-incrimination rights with respect to the indictable period of time or of the consequences of refusing to answer. Moreover, the court "advised" her erroneously, that the consequences

would be the preclusion of court-ordered support for the child. Counsel was deprived of the opportunity to argue that such testimony was irrelevant.

"The constitutional guarantee [against self-incrimination] is only that the witness be not *compelled* to give self-incrimination testimony. The test is whether, considering the totality of the circumstances, the free will of the witness was overborne. [Cit.]" *United States v. Washington*, 431 U. S. 181, 188 (97 SC 1814, 52 LE2d 238) (1977). Here, the record reveals officially compelled self-accusation which was prosecutable and was prosecuted to conviction. It was compelled in that it was demanded by the court on pain of loss by the witness who was ignorant of the fact that she could claim the right without adverse legal consequences. Yet, as said in *White*, supra at 1287, "defendant must weigh the relative advantages of silence and explanation." Although she may have understood that criminal action could follow, she was also told by the court questioning her that if she refused to answer, her attempt to get child support would be foreclosed. Such coercion tainted the confession so that its admission in the subsequent criminal trial, which is now before this court, deprived defendant of the due process of law guaranteed by the Fourteenth Amendment.

It should be pointed out that had defendant claimed the protection of our own statute, OCGA § 24-3-50, an analysis under the Fourteenth Amendment would have been moot. The long-standing statutory standard is that "[t]o make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." The pronouncement by the interrogating judge in the civil proceeding, of certain loss of economic relief should she choose not to respond, is more than a remote "fear of injury."

I am authorized to state that Chief Judge Pope, Presiding Judge McMurray, and Judge Cooper join in this dissent.

DECIDED MARCH 11, 1993 —
RECONSIDERATION DENIED APRIL 1, 1993

*Lanser, Levinson & Paul, Christopher G. Paul*, for appellant.
*Darrell E. Wilson, District Attorney, Brett W. Ladd, Assistant District Attorney*, for appellee.